BEATTY, Justice.
This is an appeal from a decree ordering the defendants, Larry and Nancy Dean, to specifically perform a contract for the purchase of certain real property. We reverse and remand.
The plaintiffs, Ronald and Mary Sneed, listed their Elmore County home for sale with Tri-City Realty, Inc., and on October *1170 12, 1978 the Deans agreed to purchase it. Prior to signing the contract, the purchasers had examined the property as fully as they desired. The purchasers paid a $500.00 binder, agreed to pay an additional $500.00 before December 15, 1978, agreed to pay $11,800.00 for the sellers’ equity, and agreed to assume an outstanding mortgage indebtedness of $48,760.00. Closing was to occur not later than January 10, 1979, and the agreement was to be approved by Johnson and Associates, the mortgagee. Although the purchasers were attempting to sell their house in Jefferson County, their agreement to purchase was not contingent upon sale of that house.
The contract also provided that the sellers were to provide the purchasers with an abstract of title within ten days of the contract date, i. e., by October 22, 1978. That clause also provided:
In the event abstract fails to show a good and merchantable title . . . the Seller shall have a reasonable time after receipt of written notice of defects from Purchaser, to cure such defects and make said title merchantable. .. . [I]f said title ... is made merchantable by the Seller within a reasonable time, and the Purchaser fails and refuses to carry out this contract in accordance with all of its terms . . . Seller may proceed with specific performance of this contract.. . .
A “move-in” clause was also provided in the contract:
Seller agrees to allow purchaser to move into his home on a move in agreement for a Max. 90 days (a) $445. per month, paying rent one month in advance....
A separate move-in agreement, although dated October 22,1978, apparently was executed between October 12, and October 14, 1978, and the purchasers then moved into the house. The agreed rent was paid for October, November and December, and the Deans lived in the home until January 20, 1979.
During the latter part of December, 1978, not having sold their Birmingham home, the Deans contacted their real estate agent, Hawn, to request an extension of the contract from the January 10, 1979 closing date. Hawn contacted the Sneeds, who agreed to an extension, although no specific length of time was fixed. On January 9, 1979, after they had been informed that the extension had been granted, the Deans delivered to Hawn a post-dated check in the amount of $500.00, which represented the second $500.00 payment contracted for earlier.
When a firm date for closing still had not been set, the Sneeds, the sellers, communicated with the Deans, the buyers, on January 18, 1979, and offered:
[ T]o extend the contract on an indefinite basis with one exception, that being that the rent monies that were paid [would be] increased by One Hundred Dollars ($100.00) to compensate [the Sneeds] for keeping [their] money tied up longer than the contracted time. . . .
According to Mr. Sneed, Mr. Dean responded by telling Sneed that he, Dean, could not close the transaction because he had not sold his Birmingham house. Several days later they had another telephone conversation during which Dean refused to close the sale because, according to him, the electric bills were high and the house was infested with wasps.
Ultimately the sellers brought suit for specific performance. Following the initial pleadings the defendants filed an amended answer alleging that the move-in agreement precluded the plaintiffs’ suit for specific performance. On August 7, 1979 the trial court took evidence ore tenus. The next day the defendants counterclaimed for a return of the $500.00 binder, alleging that the plaintiffs-sellers had breached the agreement by failing to provide an abstract of title and a written statement from the federal housing commissioner. This was followed by an amended complaint alleging that an oral contract existed under which part of the purchase price had been paid and the defendants had taken possession of the subject property.
On October 2, 1979 the trial court entered its decree, ordering the defendants to specifically perform the contact. The plain *1171 tiffs were ordered to execute a good and sufficient warranty deed conveying the property to the defendants and to file an abstract of title to the property in court within ten days. The defendants, the Deans, then appealed.
The appeal was first submitted to this Court on the briefs in May 1980. At that time the defendants advanced six factual contentions which they alleged required a reversal of the trial court’s order. In their reply brief, the defendants stated that the subject property had been sold to a third party by the plaintiffs and asked this Court for leave to file a Rule 60(b) motion in the trial court. On July 28, 1980 this Court withheld submission and granted the request of the Deans for leave to file a Rule 60(b) motion. This motion was filed with the circuit court and denied. Following that denial, the case was re-submitted to this Court, whereupon the plaintiffs-sellers moved to dismiss the appeal on the ground that the defendants-purchasers had not filed another notice of appeal. That position is untenable. It was not necessary for the defendants to file a new appeal since this Court merely withheld submission of this case until a hearing could be held on the Rule 60(b) motion. The matter was then properly re-submitted to this Court.
Defendants now contend that the trial court erred to reversal in denying the 60(b) motion based on the ground that there was newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial. Defendants urge that the new evidence proved that the plaintiffs-sellers had subsequently sold the land in question to a third party, and that the second sale precludes the specific performance of their contract.
The evidence at the hearing on the Rule 60(b) motion consisted of two exhibits presented by the defendants, and the testimony of Mr. Sneed and Mr. Dean. Exhibit A was a contract dated February 15, 1980, which showed the Sneeds as sellers and Donald Stroud as purchaser of the property in question. The contract was signed by all three parties to the contract. In this agreement the sellers agreed to sell and the purchaser agreed to purchase the premises for the price of $60,500.00 with the purchaser (Stroud) assuming the outstanding mortgage of $48,000.00 and agreeing to pay $12,-500.00 in a period of two years. Exhibit B was an undated addendum to the contract, which stated that purchaser was to lease the residence for the first year at $325.00 per month, and that the purchaser was to lease the property for the second year at $375.00 per month with 25% of the payment going toward a down payment. The sellers were to carry a balloon note for $12,500.00 for two years. This addendum did supplement the original contract in outlining how payments were to be made, but in no way did it change the fact that the plaintiffs-sellers had again contracted to sell this property to Mr. Stroud.
Mr. Sneed did not refute the existence of the second contract, but testified that he had not signed or executed any deed to Mr. Stroud. He said that the second contract was not fulfilled and that Stroud was not living on the property. He did, however, admit that Stroud had lived on the property for a period of two months and that he, Sneed, had received $325.00 from Stroud under this contract.
The trial judge, after hearing all the evidence, made the following order:
Appellants’ Motion under Rule 60(b) of the Alabama Rules of Civil Procedure having been presented to the Court and both parties being represented by their respective attorneys, the Court proceeded to hear the evidence ore tenus and is of the opinion that the allegations of the Motion are untrue and that Petitioner is not entitled to the relief prayed for. It is, therefore, the ORDER, JUDGMENT AND DECREE OF THE COURT that the Appellants be and they are hereby ORDERED to comply with the former Order of this Court requiring them to purchase the property involved in the lawsuit from the Appellees.
We note initially that the evidence presented at the hearing on the 60(b) motion was heard by the trial court ore tenus. *1172 Thus, the decision of the trial court is favored with a presumption of correctness, and will not be reversed unless palpably wrong, without supporting evidence, or manifestly unjust. Gertz v. Allen, Ala., 376 So.2d 695 (1979).
The issue, therefore, is whether the trial court’s decision that the allegations of petitioner’s 60(b) motion are untrue and that petitioner is not entitled to relief under the 60(b) motion is palpably wrong, without supporting evidence or manifestly unjust. We hold that it is and reverse.
The defendants’ position is that by entering into the second contract, the existence of which was undisputed, and even conceded by the Sneeds, sellers, the plaintiffs waived any right to specific performance which they otherwise might have obtained under the original contract.
We recognize the general rule that the right of a person to specific performance of his contract may be lost by his abandonment thereof, by his acquiescence in a breach of it, or by conduct inconsistent with the right to relief, which amounts to a waiver or an estoppel. 81 C.J.S. Specific Performance § 25. This rule was succinctly stated in Hamon v. Allen, 457 S.W.2d 384 (Tex.Civ.App.1970), quoting Kluck v. Leuschner, 70 S.W.2d 768 (Tex.Civ.App.1934), as follows:
The right to specific performance is one which may be waived or abandoned and abandonment may be inferred from the circumstances or the conduct of the parties showing an intention inconsistent with performance. Such vendor who intends to insist upon a specific performance must at all times deal with the property in a manner consistent with a sale thereof to his vendee. He cannot treat the property as his own and deal with it in a manner inconsistent with such sale and thus speculate on the improvement of his position and thereafter insist upon specific performance of the contract by the vendee. ... [457 S.W.2d at 392.]
This rule applies readily to the case at bar. Certainly the circumstances show an intention inconsistent with the performance of the initial contract. The sellers treated the property as their own and dealt with the property in a manner inconsistent with the first sale to the Deans by reselling it to Stroud. When the second sale failed, apparently they realized they would benefit from the specific performance of the first contract and resorted back to it. Surely the conduct of the Sneeds, in reselling the property in question to Stroud, constituted a waiver of their rights to specific performance of their first contract and they cannot be allowed to insist upon its specific performance now.
In Kosky v. Borowko, 224 App.Div. 764, 229 N.Y.S. 714 (1928), a vendor who had contracted to convey land to a buyer brought an action for specific performance against the buyer. The vendor, after commencement of the action, disposed of the property he was to convey under that contract. The court held that he had abandoned his rights under the contract since he could not himself comply with the terms of the contract. “It would be inequitable to enforce a contract at the instance of a party who voluntarily placed himself in such a position that he cannot himself comply with it.” Kosky v. Borowko, supra.
The situation in the instant case differs from that in Kosky, supra, only because the second contract here was not fulfilled and the second purchaser has vacated the premises. These differences are of no import, since the right to specific performance of the first contract was effectively abandoned by the plaintiffs-sellers when they began to treat the property in a manner inconsistent with the initial sale. Having voluntarily abandoned their right to specific performance by reselling the property, they cannot now revert back to the initial contract and demand its specific performance merely because their second contract failed.
We withhold any comment regarding the recovery of damages only.
The trial court’s finding that the allegations of the 60(b) motion were untrue is unclear. If by that statement the trial court meant that it found that there was no *1173 second sales contract, that finding is erroneous, since the existence and even the validity of that contract are not questioned. Thus, such a decision would be without supporting evidence and manifestly unjust. If, however, the trial court did recognize that the plaintiffs made a second contract to sell the property in question, then it necessarily follows that they abandoned any right they might have had to specific performance. For this reason, the finding of the trial court that the defendants were not entitled to relief under their 60(b) motion was clearly erroneous and without supporting evidence. Thus, the decision must be and is reversed and remanded to the trial court with directions to enter an order not inconsistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C. J., and MADDOX, JONES and SHORES, JJ., concur.