The plaintiff, Fred O. Henderson, Jr., filed an action against Grace J. Winkler for specific performance of a contract to convey real property and for damages for breach of that contract. The trial court granted the defendant's motion for summary judgment, and the plaintiff appealed. We affirm.
Desiring to sell a parcel of land she owned in Montgomery, Grace Winkler contracted with J.L. Todd Auction Company (Todd) to sell the property at auction for at least $300,000, payable according to terms of "25% down; balance over 15 years at 12% interest." Fred Henderson attended the auction and submitted the highest bid on the property, but his bid of $125,000 was rejected. Nevertheless, negotiations ensued between Mr. Henderson and Todd, as agent for Mrs. Winkler, during which Mr. Henderson agreed to increase his bid by $20,000 in exchange for better payment terms. The agreement they reached provided that Mr. Henderson would pay $20,000 down and the "balance in 30 annual payments with interest at 12%, with Buyer having prepayment privilege. (Annual payment approximately $15,400.00)."
Todd convinced Mrs. Winkler to accept these terms by stressing the fact that, even though the purchase price was lower than she had previously insisted upon, she would recover the difference and more in interest. With that understanding, Mrs. Winkler, who was 79 years old, signed the contract. It was not until later, after Mrs. Winkler returned home and began to analyze the contract, that she realized that she would not receive this interest unless she lived to be 109 years old. Moreover, because of the prepayment privilege, she was not assured of receiving any interest at all except for the first year.
Upon realizing these facts, she telephoned Mr. Henderson and told him that she did not want to go through with the sale, explaining her dissatisfaction with the payment terms. In his deposition, Mr. *Page 1360 
Henderson admitted the following in response to questions pertaining to his conversation with Mrs. Winkler:
 "Q. After then, did you receive a long distance call from Mrs. Winkler?
"A. Yes, I did.
"Q. How long after that?
 "A. I think the auction was on Friday. And I think Ms. Winkler called me Monday or Tuesday. I'm not sure exactly.
"Q. And what did she say?
 "A. She just told me she didn't want to go through with it.
"Q. And what did you say?
 "A. I told her I didn't want to make her do anything she didn't want to do.
 "Q. Didn't you tell her that you understood; that you also had a mother?
"A. Yes, I sure did.
 "Q. And that you wouldn't make her do anything she didn't want to do?
"A. That's correct."
Thereafter, Mr. Henderson requested Todd to return his $20,000 down payment, which the company did on August 25, 1983.
Subsequently, Mr. Henderson filed a complaint for specific performance of the contract and asked for damages, stating:
 "3. Plaintiff made a down payment, timely tendered the purchase price to Defendant and requested a conveyance of the real property described in the contract and continues to stand ready to tender the purchase price, but Defendant refused and continues to refuse to accept the tender or make the conveyance."
Mrs. Winkler filed a motion to dismiss, and, after the trial court denied her motion, she filed an answer alleging that the parties had reached an agreement to terminate the contract. She further alleged that Mr. Henderson had demanded and received the return of his down payment, which was inconsistent with his claim to a right of specific performance.
Next, Mrs. Winkler filed a motion for summary judgment along with her affidavit, Mr. Henderson's deposition, and a request for admission of facts and response, all in support of the motion. In her affidavit, Mrs. Winkler stated that, based on her telephone conversation with Mr. Henderson, she understood that she and Mr. Henderson "had agreed that the contract was terminated and would not be enforced. I understand that Henderson then made Todd Auction Company give back his purchase price." Mr. Henderson filed no affidavit contesting any of the statements in Mrs. Winkler's affidavit or any other documents in opposition to the motion for summary judgment, apparently relying on his pleadings and the contention made in his deposition that he was merely "considering letting [Mrs. Winkler] out of the contract." After an oral hearing, the court granted Mrs. Winkler's motion. Mr. Henderson then filed a motion to reconsider along with a motion to separate claims and to amend the complaint, both of which were denied.
The sole issue for review by this Court is whether the trial court erred in granting the motion for summary judgment.
Mr. Henderson contends in brief that a material issue of fact existed concerning whether or not in his conversation with Mrs. Winkler he agreed to a rescission of the contract, and, consequently, that the trial court erred in granting Mrs. Winkler's motion for summary judgment. Mrs. Winkler argues that not only did Mr. Henderson orally agree to rescind the contract, but he also recognized the rescission by demanding and receiving the return of his down payment, and, therefore, summary judgment was correct in this case. We agree.
"In reviewing a summary judgment, we must determine whether there exists any genuine issue of material fact and, if not, whether the substantive law was correctly applied to the undisputed facts." Watts Construction Co. v. Cullman County,382 So.2d 520, 522 (Ala. 1980). The moving party must clearly show that *Page 1361 
no genuine issue as to any material fact exists and that the movant is entitled to judgment as a matter of law before summary judgment may be granted. If, however, there is a scintilla of evidence supporting the position of the party against whom the motion is made, summary judgment may not be granted. Savage v. Wright, 439 So.2d 120 (Ala. 1983); Haynes v.Ford Motor Co., 435 So.2d 1227 (Ala. 1983). In determining whether there was a scintilla of evidence that Henderson had not intended to rescind, the facts presented to the trial court on the motion, and all reasonable inferences therefrom, must be viewed most favorably toward Mr. Henderson. Pittman v. Martin,429 So.2d 976 (Ala. 1983).
It is well settled that parties to a written contract may by mutual consent and without other consideration rescind their contract. Watson v. McGee, 348 So.2d 461 (Ala. 1977). Whether the parties rescinded their contract poses a question of fact to be determined from their intent as clearly manifested in their words, acts, or conduct. San-Ann Service, Inc. v.Bedingfield, 293 Ala. 469, 305 So.2d 374 (1974). Furthermore, where the acts and conduct of one party are inconsistent with the existence of a contract and are acquiesced in by the other, such contract will be treated as abandoned or rescinded. WattsConstruction Co. v. Cullman County, supra.
In the instant case, the parties' words, acts, and conduct, as evidenced in Mrs. Winkler's affidavit and Mr. Henderson's deposition, are not in dispute and are not subject to differing inferences and conclusions. Mr. Henderson told Mrs. Winkler that he "wouldn't make her do anything she didn't want to do" in response to her request not to go through with the sale. Moreover, the conclusion is clear from statements made by Mr. Henderson in his deposition, set forth below, that the day he spoke with Mrs. Winkler he agreed to let her out of thecontract, i.e., to rescind it, since his wife, who had not yet seen the property, was upset that he had contracted to buy the land without her knowledge or consent. However, later that night, after his wife told him she had looked at the property and very much wanted to live there, Mr. Henderson changed hismind and decided to hold Mrs. Winkler to the contract:
 "Q. You have testified — When Ms. Winkler called you, did you say I won't make you do anything you don't want to do?
 "A. I don't recall the exact words, but it was to I don't want to make you do anything you don't want to do.
 "Q. Did you enter into any kind of contract with her to make her do it?
 "A. No. That was a verbal explanation, and I would like to clarify why I said that. At that point in time — Let me say this. I went to the auction to bid on the property if it was within reason. But at that point in time my wife hadn't seen it, hadn't laid eyes on it. And when I went home and told her what I'd done, we had a little bit of an argument because she didn't like the idea of me doing something like that without her knowing about it. And I was under the impression that she did not want to buy the property. But that day when I was talking to Ms. Winkler, at that point as far as I knew, my wife had never seen the property. When I came home that night, my wife had been to the property with her mother. And they were excited. They were real tickled about it. And she wanted to move out there. And that's, you know — I told her I'd talked to Ms. Winkler earlier that day and told her I was considering letting her out of the contract. That's when my wife got into it and said she wanted to move out there and live out there."
There is also no dispute that Mr. Henderson demanded and accepted return of his $20,000 down payment. The general rule is that the right of a person to specific *Page 1362 
performance of his contract may be lost by his abandonment thereof, by his acquiescence in a breach of it, or by conduct inconsistent with the right to relief, which amounts to a waiver or an estoppel. Dean v. Sneed, 392 So.2d 1169 (Ala. 1981). See also 81 C.J.S. Specific Performance § 25 at p. 753 (1977): "[S]pecific performance may be denied a vendee who has brought a prior action to recover a deposit or earnest money under the contract." With stronger reason, one who has actually obtained such a refund, voluntarily and without suit, is precluded from seeking specific performance. Thus, accepting the return of his down payment, Mr. Henderson's conduct,vis-a-vis the property, was inconsistent with a claim for specific performance. Dean v. Sneed, supra.
Thus, construing the evidence most favorably toward Mr. Henderson, his actions in this case demand a finding that he intended to rescind the contract as made, notwithstanding his denial that he so intended.
Furthermore, concluding that the contract was rescinded by the parties, we find no merit in Mr. Henderson's contention that the trial court erred in granting summary judgment on the question of his right to recover damages as an alternate remedy for breach of contract. Where the parties have by mutual agreement rescinded a contract, one of the parties thereto cannot recover damages in an action for breach of contract.Watts Construction Co. v. Cullman County, supra; Thomas v.Smoot, 2 Ala. App. 407, 56 So. 1 (1911).
For the foregoing reasons, we find the trial judge was correct in granting Mrs. Winkler's motion for summary judgment, and the judgment is due to be affirmed. It is so ordered.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.