This is an appeal by plaintiff Bobbie Davis Allen from a summary judgment granted in favor of Molton, Allen Williams Realty Company, Inc. (hereinafter "Molton"), on plaintiff's claim for malicious prosecution. We reverse and remand.
Plaintiff's husband, W.D. Allen, allegedly gave D.O. Harden, vice president of commercial sales for Molton, an open listing to sell a building that Allen and his wife owned. There is a dispute as to what, if any, agreement was reached regarding the commission. Bill Gunn, a Molton employee, allegedly introduced the Allens to Howard Holt, who eventually bought the building. *Page 28 
When Harden heard that the Allens had entered into an agreement with Holt, Harden told Mr. Allen that Molton was due a sales commission. Upon Mr. Allen's refusal to pay the commission, Harden, on behalf of Molton, sought the advice of legal counsel. On November 7, 1979, after failing to reach an agreement with Mr. Allen regarding the commission, Molton's attorney filed suit against Mr. and Mrs. Allen for $30,000 in damages on behalf of Molton.
Mrs. Allen's motion for summary judgment was denied. At the end of Molton's case, the Allens moved for a directed verdict, which was denied. At the close of all of the evidence, the Allens again moved for a directed verdict. The trial court granted the motion as to Mrs. Allen but denied it with respect to Mr. Allen. The jury then returned a verdict in favor of Mr. Allen.
On May 13, 1982, Mrs. Allen filed a malicious prosecution action against Molton, alleging that the previous action was commenced and prosecuted by Molton maliciously and without probable cause, that the action was terminated in her favor, and that, as a result of that action, she suffered damages. Molton answered, denying the allegations contained in Mrs. Allen's complaint and asserting that Mrs. Allen had failed to state a claim upon which relief could be granted and that the complaint was barred by the statute of limitations.
On March 8, 1985, Molton filed a motion for summary judgment and submitted the affidavits of Harden and William S. Pritchard, Jr. Harden stated the following in his affidavit:
 "My name is D.O. Harden. I am Vice President, Commercial Sales of Molton Realty Development Company, formally known as Molton, Allen Williams Realty Co., Inc. Bill Gunn is an agent with our company. He and I were involved in the initial contact with W.D. Allen in the sale of the building at 401 28th Street South, Birmingham, Alabama. My initial contact with Mr. Allen was on or about February 26, 1979, when he agreed to allow Molton, Allen Williams Realty Co., Inc. to show the property on a nonexclusive basis. Bill Gunn showed the property to Mr. Howard Holt of Audio Visual as a prospective purchaser of the property. After the showing of the property by Mr. Gunn, I later learned that Mr. Holt was going to purchase the property from Mr. Allen and his wife, Bobbie Davis Allen. I contacted Mr. Allen to remind him of our agreement. When I realized that he was not going to honor our agreement, I contacted our attorney, William S. Pritchard, Jr.
 "At that time, I explained to Mr. Pritchard the fact that we had entered into an agreement with Mr. Allen, that Bill Gunn in our office had actually shown the property to the prospective purchaser during the term of the agreement, and that the prospective purchaser was to buy the property. I went with Mr. Gunn to talk to Mr. Pritchard to tell him exactly what had occurred and why we believed we were due a commission. Once I contacted Mr. Pritchard, I left it in his hands to determine who was ultimately responsible and for him to try and collect the commission due. At the time that we discussed this with Mr. Pritchard the sale had not been closed but we had gotten word that it was about to. Thereafter, I relied on my attorney's advice on exactly the best way to collect this commission. Upon his advice, we had the firm of Pritchard, McCall, Jones, Spencer 
O'Kelley enter suit against both sellers."
Pritchard's affidavit provided the following:
 "My name is William S. Pritchard, Jr. I am a licensed attorney practicing in the Birmingham area. I am a member of the firm of Pritchard, McCall, Jones, Spencer O'Kelley who represented Molton Realty Development Company, formally known as Molton, Allen Williams Realty Co., Inc. in that certain proceeding styled Molton, Allen Williams Realty Company, Inc., a corporation v. Pete Allen, a/k/a W.D. Allen and Bobbie Davis Allen, Case Number CV 79-04641, *Page 29 
Circuit Court of Jefferson County, Alabama.
 "Back in March of 1979, Mr. D.O. Harden and Bill Gunn of Molton Realty Development Company came to my office and explained to me how they had entered into an agreement with Pete Allen, husband of the plaintiff, (collectively referred hereinafter as `Allens'), to act as a nonexclusive agent to sell the commercial property located at 401 28th Street South. At the time they came to see me, they said that a contract had been signed between Mr. Allen, the plaintiff, and Howard Holt but they did not know whether the sale had been closed. I wrote Mr. Allen to put him on notice of the fact that Molton, Allen 
Williams Realty Co., Inc. was due a commission. My letter of March 30, 1979, preceded the closing which took place on April 30, 1979. . . .
 "Thereafter, I received a telephone call from Bob Austin, attorney for the Allens. He advised me that the Allens did not feel that any commission was due and [were] not interested in settling this claim prior to closing. During this conversation, or shortly thereafter, I was made aware that the plaintiff and her husband, the Allens, had entered into a contract dated March 19, 1979, to sell the property listed with the defendant to the Holts.
 "Upon learning that the sale had gone through, I wrote Mr. Austin again making a demand for the commission. . . .
 "After a research of the issues and a full understanding of the facts, including confirming that the plaintiff and her husband [had] owned and conveyed the property known as 401 28th Street South, Birmingham, Alabama, to the Holts, on or about April 30, 1979; and after an interview with Mr. Holt, the purchaser, it was my advice to file a civil complaint in the Circuit Court of Jefferson County against the sellers, Mr. and Mrs. Allen, for the commission due Molton, Allen Williams Realty Co., Inc. for being the procuring cause and effecting the sale of the property. All of the facts revealed that employees of the defendant had told the purchaser about the Allens' property and that it was for sale before any contract had been entered into with the purchaser; that the defendant's employees considered that the plaintiff's husband, acting for the Allens, had listed 401 28th Street South, Birmingham, Alabama, with the defendant for sale.
 "Molton, Allen Williams Realty Co., Inc. followed my advice and had our firm enter suit against the sellers on November 7, 1979."
The Allens filed counter affidavits. Mr. Allen's affidavit provided:
 "My name is W.D. (Pete) Allen. I am the husband of the Plaintiff in the above referenced matter, Bobbie Davis Allen. I have personal knowledge of the facts surrounding the basis of the law suit in that I am the one that had the only contact with D.O. (Red) Harden concerning the sale of the property. Some of the facts which Mr. Harden related to Mr. Pritchard concerning our conversations as they relate to the property located at 401 28th Street South are not true or correct. As I stated in my deposition, I never entered into any agreement with Molton, Allen 
Williams Realty Company, Inc., but rather with Red Harden, individually. The agreement was that if Mr. Harden brought me a purchaser willing to pay in excess of $220,000.00 for the property then I would pay him the excess as a commission. Mr. Harden's statements to me were since he did not have any expenses incurred in the property that he would try to turn it quickly and `make a few quick bucks on it.' At no time did I agree to him pricing the property at $250,000.00 nor at any time did I tell him that's the price I was asking. I never quoted a price to anyone that was in excess of $220,000.00.
 "I never related to Mr. Harden that I was acting on behalf of my wife in this matter, but in fact told him that she had a real estate license and if any listing were going to [be] made with any real estate company that it would be through *Page 30 
the company with which she was employed.
 "At no time in any correspondence received from Mr. Pritchard by myself or my attorney Robert Austin did he make any claim for commission from anyone other than myself. Mr. Pritchard could not have had a full, complete, and truthful disclosure of all of the facts surrounding this matter or he would not have filed suit against my wife."
Mrs. Allen stated the following in her affidavit:
 "My name is Bobbie Davis Allen and I am Plaintiff in the above styled matter. Until suit was filed against me by Molton, Allen Williams Realty Company, Inc. in November of 1979, I had no contact with the company or any of its employees. I never entered into any agreement with them to pay them any commission on the sale of any property . . . which I owned. I never authorized my husband to act on my behalf in entering into any agreement to pay them any commission for any property which I owned.
 "At the time of the sale of the property which is the subject of the law suit filed against me by Molton, Allen Williams Realty Company, Inc. in 1979, I was a licensed real estate agent and would have listed the property through my employer if a listing were going to be made.
 "No one ever contacted me prior to suit being filed against me, either making demand on me for any commission or inquiring as to my side of the story regarding any claim for any commission claimed by Molton, Allen Williams Realty Company, Inc. against me. Any facts stated by anyone to anyone contrary to what I have stated, are untrue."
In addition to their affidavits, the Allens submitted the deposition of Pritchard.
On March 28, 1985, the trial court granted Molton's motion for summary judgment, on the basis that the facts as set out showed that Molton had probable cause to bring the previous action against Mrs. Allen as well as against her husband.
Summary judgment is authorized only when the moving party clearly shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. If there is a scintilla of evidence supporting the party against whom the motion is made, summary judgment may not be granted. Henderson v. Winkler, 454 So.2d 1358 (Ala. 1984);Savage v. Wright, 439 So.2d 120 (Ala. 1983). Accordingly, we must review the trial court's granting of Molton's motion for summary judgment in light of the scintilla rule.
The essential elements of a cause of action for malicious prosecution are (1) a judicial proceeding initiated by the defendant, (2) the lack of probable cause; (3) malice on the part of the defendant; (4) termination of the judicial proceeding favorably to plaintiff; and (5) damages. In order for the plaintiff to prevail, every element must be proved.Kitchens v. Winn-Dixie Montgomery, Inc., 456 So.2d 45 (Ala. 1984); Gulf States Paper Corp. v. Hawkins, 444 So.2d 381 (Ala. 1983); Birwood Paper Co. v. Damsky, 285 Ala. 127, 229 So.2d 514
(1969).
The element of lack of probable cause is the focus of this appeal. Probable cause in malicious prosecution cases is that state of facts which would lead a person of reasonable prudence to honestly believe that the claims put forth in the prior suit would prevail. Birwood Paper Co., supra; First Shelby NationalBank v. Mitchell, 406 So.2d 959 (Ala.Civ.App. 1981).
Molton argues that probable cause can be found to exist in the present action based on the trial court's denial, in the first action, of Mrs. Allen's motion for summary judgment and its initial denial of her motion for directed verdict, citingBoothby Realty Co. v. Haywood, 269 Ala. 549, 114 So.2d 555
(1959). Boothby is distinguishable from the present case, however. In Boothby, this Court held that the entry of a favorable judgment in a landlord's civil action against a former tenant for nonpayment of rent was conclusive of the existence *Page 31 
of probable cause, notwithstanding the subsequent reversal of the judgment on appeal, since there was no evidence of fraud, perjury, or use of improper means in procuring the first judgment. In the present case, however, there was never a judgment favorable to Molton. While the trial court ruled favorably to Molton when it denied Mrs. Allen's motion for summary judgment and her first motion for directed verdict, these rulings made before and during the trial were not judgments, because they did not terminate the proceedings. Cf.Jewell v. Jackson Whitsitt Cotton Co., 331 So.2d 623 (Ala. 1976). When the trial court granted Mrs. Allen's second motion for directed verdict, however, the proceeding against Mrs. Allen was terminated by the entry of a judgment in her favor.
Mrs. Allen contends, and the record supports her contention, that Molton was attempting to use advice of counsel as an absolute defense. The advice of counsel may, under certain circumstances, supply the element of probable cause:
 "It is clear the law in Alabama is that advice of counsel, honestly sought and acted on in good faith, supplies an indispensable element of probable cause for legal action and is a complete defense to an action for malicious prosecution. See Birwood Paper Co. v. Damsky, 285 Ala. 127, 229 So.2d 514 (1969); 14 Ala.Dig. Malicious [Prosecution], Key 21 (1). However, for this defense to prevail, it must be that a factual conclusion is made that the attorney's advice was given on a full and fair statement of all the facts and circumstances known to, in this instance, the defendant. See Alabama Dry Dock Shipbuilding Co. v. Bates, 33 Ala. App. 81, 30 So.2d 273 (1947); 14 Ala.Dig. Malicious [Prosecution], Key 21 (2). Whether such full and fair statement was given is, in this instance, a question of fact for the jury to determine. See Bates, supra."
Broussard v. Brown, 353 So.2d 804, 805 (Ala.Civ.App. 1978). Mrs. Allen argues that the trial court erred in finding probable cause because, she says, Molton did not fully and fairly disclose the facts to Pritchard before Pritchard recommended commencing suit. Pritchard's deposition, in fact, calls into question whether there was a full and fair disclosure:
 "Q. Did Mr. Harden tell you that Mr. Allen related to him anything to the effect that he would pay him any commission if he didn't net more than two twenty [$220,000]?
"A. I don't know.
". . .
"Q. What was the commission agreement?
"A. I don't know.
". . .
 "Q. Well, did Mr. Harden tell you to sue for $30,000?
 "A. I doubt if he told me what to do. He authorized me to proceed with the lawsuit, which I recommended that he do, and I assume I was the one that came up with the $30,000.
"Q. Do you know how you came up with that?
 "A. I don't know, I would have to go back and go through my files to try to make some determination of it.
". . .
 Q. Did y'all have a discussion as to who the owners of the property were, or owner?
 "A. No, I don't know that we ever discussed that. I don't think I ever looked at it. The only thing that Red Harden said was that Allen had told him that if he sold it, he could get a sale on it, they would sell it and — or give him a commission. And he had mentioned his wife, so I just assumed that his wife was owner.
"Q. Who mentioned his wife?
"A. Pete Allen did.
"Q. When?
"A. February when he was talking [to] Red Harden.
 "Q. Did he mention anything about ownership? Just said that she was a real estate agent, as I recall your — *Page 32 
 "A. Real estate agent, and I think he said that we would sell it on these terms, something to that effect, that inferred that she was the owner of the property, and that he was acting for her.
". . .
 "Q. And it's your testimony . . . you never advised [Molton] who you were going to sue or how much?
 "A. There is no question in my mind in May or March, April of '79 I told them I thought they had a good claim for commissions. And I did advise them that it appeared that they weren't going to get their commissions unless we sued for it and recommended that we institute suit.
"Q. And that's all?
 "A. And I instituted suit on that basis, and I am sure the figure was my creation, the amount.
"Q. And also the parties, other than Mr. Allen.
 "A. Oh, yes, I made the decision on who the parties were.
"Q. Based on what [Molton] had related to you?
 "A. Based on what they related to you, what you related to me, what the contract provided, what the deed provided and all of that accumulation I used to make my judgment as to who to sue.
 "I don't think they told me any one person to sue; I am going to be honest with you.
". . .
 "Q. On what representation to you, on what facts did you determine that Mrs. Allen knew that there would be any commission claimed by Molton, Allen and Williams on this particular sale at $220,000?
 "A. The property was up for sale. Mr. Allen was speaking in her behalf. They listed the property with Molton, Allen and Williams for sale and Molton, Allen and Williams brought a purchaser to them and a sale was consummated through that effort. No problem that I have with that."
The above excerpts from Pritchard's deposition raise questions as to what Pritchard knew (and was told) regarding Mrs. Allen's role in the listing agreement and what he was told regarding the terms of the listing agreement. Pritchard indicated that he needed to check his files to discover some of the information requested; however, there is no evidence in the record that any additional information was supplied. Moreover, all of the depositions indicate that any listing agreement was between Harden (and, therefore, possibly Molton) and Mr. Allen.
In light of Pritchard's deposition, which calls into question whether there was a full and fair disclosure, and in light of the affidavits, which support Mrs. Allen's contention that she was not a party to the listing agreement, we must find that the trial court erred in granting Molton's summary judgment.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.