HOUSTON, Justice.
Dianne Henderson; George Werner, an agent for Franklin Life Insurance Company (“Franklin Life”); and Randolph Davis, an employee of Southern Lifestyles Manufactured Housing, Inc. (“Southern Lifestyles”),[1] were involved in a three-vehicle accident, in which Henderson suffered personal injuries. Henderson sued Werner, Franklin Life, Davis, and Southern Lifestyles, alleging that the negligence of all the defendants caused her injuries and seeking compensatory damages. The jury returned a verdict for Henderson against Werner and Franklin Life for $667,037.50 and against Henderson for Davis and Southern Lifestyles.
Werner had filed a cross-claim against Davis and Southern Lifestyles, alleging that Henderson’s injuries and damages were proximately caused by negligent and/or wanton conduct of Davis and Southern Lifestyles and that the damage to his vehicle was also caused by that negligent and/or wanton conduct. In the cross-claim, Werner sought to recover from Davis and Southern Lifestyles “all sums awarded against him” in the underlying suit and $5,000 for the damage to his vehicle. The jury returned the following verdict on the cross-claim:
“On the claim by George Werner against Randolph Davis and Southern Lifestyles, we, the jury, find against the Defendant George M. Werner, Jr. against Defendant Randolph Davis and *1007 Southern Lifestyles for all sums awarded to the Plaintiff Dianne Henderson and the sum of _0_ to George M. Werner, Jr. as compensatory damages.
“OR
“We, the jury, find in favor of Randolph Davis and Southern Lifestyles on the claims brought against them by George Werner.
“Yes X ”
We recognize that, at least when it is taken out of the context of the other verdict forms submitted to the jury, this verdict form appears ambiguous.
The trial court entered a judgment on the verdicts. Werner filed a motion for new trial, or in the alternative, to alter or amend the judgment, or in the alternative for relief from judgment. Franklin Life filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial and/or remittitur. The trial court denied those motions. Werner and Franklin Life appeal. We affirm.
Werner raises one issue — agency. His only argument on appeal is that at the time of the accident he was an agent of Franklin Life and was acting within the line and scope of his employment. We note that the jury verdict was against both Wer-ner and Franklin Life and, because there has been no challenge to Werner’s claim of an agency relationship, we need not address that issue. We note, however, that a finding of agency — and the jury did find agency — would not relieve Werner of the consequences of his own negligence.
Franklin Life raises two issues: whether the verdict entered on Werner’s cross-claim was inconsistent and whether the verdict entered against it and Werner was excessive. The cross-claim was filed by Werner against Davis and Southern Lifestyles. Franklin Life was not a party to the cross-claim and therefore has no standing to raise the issue of the inconsistency of the verdict on that cross-claim. Rather, Werner was the only one who could have challenged the verdict on his cross-claim as being inconsistent. This he did not do. Werner neither raised nor argued the issue in his brief. Furthermore, Werner made no objection to the choice of verdict forms presented to the jury, no objection to the verdict before the jury was discharged, and no objection at the time the jury was polled. Therefore, any objection to any possible inconsistency has been waived. See, Norman Properties v. Bozeman, 557 So.2d 1265 (Ala.1990). Consequently, whether the verdict entered on Werner’s cross-claim was inconsistent is not an issue for our review on appeal.
Franklin Life insists that the compensatory damage award of $667,037.50 was so excessive as to indicate that it was the product of bias, passion, prejudice, partiality, or corruption.
Henderson contends that she offered extensive evidence in support of her claim for compensatory damages against Werner and Southern Lifestyles for medical expenses, physical pain and suffering, mental anguish, and permanent injury and disability; and she contends that the jury verdict fairly and reasonably compensated her for the losses and injuries she sustained. The evidence included hospital records and billing statements relating to her treatment at Humana Hospital; photographs of her physical injuries; testimony of the board-certified orthopedic surgeon at the Alabama Sports Medicine Clinic in Birmingham, Alabama, pertaining to the nature and extent of her injuries and his prognosis concerning these injuries; the notes and charges of the board-certified orthopedic surgeon; records relating to the physical therapy she received from Montgomery HealthSouth Rehabilitation Center and Birmingham HealthSouth Rehabilitation Center; and her testimony concerning anxiety attacks she began to suffer after the accident, concerning medication for sleep and depression prescribed by her family physician, and concerning the pain she has continued to suffer in performing routine work-related activities.
The trial court, in ruling on Franklin Life’s post-judgment motion raising the ex-cessiveness issue, held that “the verdict of the jury ... against [Werner and Franklin *1008 Life] is not excessive and did not result from bias, passion, prejudice, corruption, or other improper motive and was supported by the record.”
It is well established that a jury verdict is presumed correct and that that presumption is strengthened by the trial court’s denial of a motion for new trial. See Atkins Ford Sales, Inc. v. Royster, 560 So.2d 197 (Ala.1990); Super Valu Stores, Inc. v. Peterson, 506 So.2d 317 (Ala.1987). In considering the amount of the jury verdict, each case must be determined on its own facts and a court of review may not substitute its judgment for that of the jury. Id.
With these principles in mind, we thoroughly reviewed the record, which gave us no reason to disagree with the jury’s award of damages. Rather, we note that Henderson presented extensive evidence in support of her claim for compensatory damages, as exemplified by the following medical testimony of the board-certified orthopedic surgeon from Birmingham who treated Henderson, describing the nature of Henderson’s injuries and the fact that those injuries were permanent:
“Q. ... [D]id you have an opportunity to examine or treat [Henderson]?
“A. Yes, I did.
[[Image here]]
“Q. And at that time ... what was her complaint?
“A. ... She had pretty severe pain on the left side of her rib cage ... and ... she had a broken sternum in addition.
[[Image here]]
“Q. ... Did you examine [Henderson] on the 24th of April 1990.
[[Image here]]
“A. I had some X-rays done. And I was able to look at some X-rays she had with her in addition. And the sternum had — the broken sternum had healed but it had healed overlapped and shortened to some extent. And we also X-rayed her cervical spine which we felt was normal.
“Q. When you say ‘her sternum overlapped,’ do you mean that the bone did not joint together as it was prior to the break?
“A. That’s exactly what I mean.
“Q. And is this or was this overlap not only recognizable on X-rays, but could you actually see it and determine it by physically examining [Henderson]?
“A. You could indeed. On the front of her chest she had a visible deformity where that bone overlapped and this caused a little bit of what I’ll call angulation of her rib cage. In other words, her rib cage didn’t look uniform looking directly at her.
“Q. What problem would the overlap or does the overlap in the sternum cause as far as ... health or well being?
“A. Well, in her case the overlap caused the ribs to be slightly deformed and the ribs not only are in the front and sides, but they go around to the back and hook into the spine in addition to that and this caused her right shoulder to sit lower than her left shoulder and this caused a tension or a strain on the muscles on that side of her upper back.
“Q. Doctor, is such a problem permanent in nature ... ?
“A. Yes, sir.
“Q. And is there any pain or residual pain associated with the problem, that is, the rib cage being out of place and one shoulder more elevated than the other?
“A. There is indeed.
“Q. In your medical opinion was that pain caused by the broken sternum and the overlap of the sternum or the failure for it to properly heal or adhese?
“A. Yes, sir.
“Q. Doctor, in your medical opinion is that problem something that can be corrected by additional surgery?
“A. Additional surgery would not be indicated in this case, it would be too dangerous.
“Q. ... [W]hat is the prognosis on the problem ... ?
“A. The prognosis is that it stays just like it is. She has to learn how to live with it.
*1009 “Q. And are you telling us, Doctor, that the pain associated that you described is going to be something that she is going to have to live with for the rest of her life?

“A. Yes, sir.”

(Emphasis added.)
In addition, the evidence showed that Henderson was 42 years old at the time of the trial; that she had incurred $5,000 in medical expenses; that State Farm was entitled to be subrogated in the amount of $19,338.60; and that she had a life expectancy of 36.55 years pursuant to a mortality table admitted into evidence. Henderson’s attorney suggested to the jury that $667,-037 (or approximately $50 per day) would be an appropriate award for Henderson’s pain and suffering, mental anguish, and permanent injury and disability. It appears that the jury awarded Henderson the amount requested. The jury could observe Henderson’s demeanor as she testified to the injuries she had sustained, to the pain she had suffered, and to the mental anguish she had suffered as a result of the accident. The jury also could observe the disfigurement Henderson will endure for the remainder of her life. We find no evidence of any misconduct, bias, passion, prejudice, corruption, or other improper motive that may have affected the verdict.
Based on the foregoing and recognizing that the interest of Henderson, as the victim, must be foremost in our mind when reviewing the propriety of the compensatory damages award, see Bridges v. Clements, 580 So.2d 1346 (Ala.1991), we cannot say that the compensatory damages award of $667,037.50 exceeds an amount that will reasonably compensate Henderson.
The judgment is therefore affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, and STEAGALL, JJ., concur.

. At some point in the record this party is referred to as "Dennis Adams, d/b/a Southern Lifestyles Manufactured Housing, Inc.