680 So.2d 235 (1996)
Ralph WYSER
v.
RAY SUMLIN CONSTRUCTION COMPANY, INC., and Buddy Squire, Inc.
RAY SUMLIN CONSTRUCTION COMPANY, INC.
v.
Ralph WYSER.
1940661, 1940742.
Supreme Court of Alabama.
May 3, 1996.
Rehearing Denied July 19, 1996.
*237 Charles J. Lorant, Birmingham, for appellant/cross appellee Ralph Wyser.
Mark E. Spear of Richardson, Daniell, Spear & Upton, P.C., Mobile, for appellees/cross appellants.
INGRAM, Justice.
Ralph Wyser was injured at his place of employment when he fell into an unguarded elevator shaft. He sued Ray Sumlin Construction Company, Inc. (hereinafter "Sumlin"), for negligently failing to properly guard the elevator opening. The jury awarded $500,000 in compensatory damages, and the trial court entered a judgment. Sumlin moved for a judgment notwithstanding the verdict, or, in the alternative, for a new trial. The trial court, 85 days later, on January 13, 1995, entered the following order:
"IT IS HEREBY ORDERED, ADJUDGED AND DECREED by this Court that the Motion for New Trial is Denied. Judgment of the Jury is remitted to ($125,000.00) One Hundred Twenty-Five Thousand Dollars. If the Plaintiff refuses to accept the remittance a new trial will be ordered."
On January 18, 1995, Wyser objected to the remittitur. On January 25, 1995 (97 days after the filing of the post-trial motion and 12 days after the entry of the order), the trial court attempted to set aside the jury verdict and order a new trial. Wyser appeals, and Sumlin cross-appeals.
Rule 59.1, Ala.R.Civ.P., provides that a motion under Rule 59 for a new trial must be ruled on within 90 days or else it is automatically denied. French v. Steel, Inc., 445 So.2d 561 (Ala.1984). The ruling contemplated by Rule 59.1 is one that (1) denies the motion or (2) grants the motion, except in those cases where the time for ruling is extended as provided by the rule. French, supra. It does not anticipate, and cannot accommodate, an order to decide later whether to grant a new trial. French, supra.
Therefore, the January 25, 1995, order that purportedly granted a new trial is void. However, we must determine whether the January 13, 1995, order is to be construed as an outright denial of the motion for a new trial or simply as a conditional order that neither granted nor denied a new trial. In other words, was the motion for a new trial denied as of January 13, 1995, by order of the trial court, or was it denied on January 18, 1995, by operation of law because the January 13 order had no effect? We note that the resolution of this issue is of no consequence in the instant case, as the timeliness of the appeal is not an issue. Under either analysis, the motion for a new trial would have been denied, and the notice of appeal was timely filed. Nevertheless, we opine that the better reasoned view is that the January 13, 1995, order effectively denied Sumlin's motion for a new trial. The order is quite clear that Sumlin's motion for a new trial was denied. The fact that the trial court's order purported to order a remittitur has no effect. See Schiffman v. City of Irondale, 669 So.2d 136 (Ala.1995) (where this Court held that an order granting a summary judgment was a final order even though the judge's order purported to grant the nonmovant an additional 28 days to present evidence). In other words, the January 13, 1995, order denied Sumlin's motion for a new trial. Any order attempting to grant a new trial or order a remittitur is void, and the jury verdict for $500,000 compensatory damages stands.
We point out that Wyser also made an "alternative argument" concerning the purported remittitur and the grant of a new trial. However, in view of our holding that the motion was denied and that there was no proper remittitur, we need not address this argument.
*238 As noted above, Sumlin cross-appealed. It presents two issues for review: (1) Whether the trial court erred in admitting into evidence certain Occupational Safety and Health Act (hereinafter "OSHA") citations and (2) whether the trial court erred in denying Sumlin's motion for a directed verdict on the issue of contributory negligence and assumption of the risk.

OSHA Citations
This Court has held that OSHA regulations, if properly introduced, may be admissible for a jury to consider in determining the standard of care that a defendant should have followed. Knight v. Burns, Kirkley & Williams Construction Co., 331 So.2d 651 (Ala.1976). Furthermore, OSHA citations may be used to show a breach of the standard of care. Smith v. International Paper Co., 656 So.2d 355 (Ala.1995). We also note that this Court has recently held that these citations, which are public records, are admissible under a common law exception to the hearsay rule. Smith v. International Paper Co., 656 So.2d 355 (Ala.1995).
In support of his argument that Sumlin was negligent, Wyser submitted certain OSHA citations Sumlin had received concerning the lack of guards and railings at other construction sites. One citation had been issued one month before Wyser's accident; it concerned "floor openings that were not guarded by standard railings and toeboards or covers." The other citation related to "pits or trap door openings that were not guarded by covers of standard strength and construction or removable standard railings," and that citation also stated that "[a] fan duct pit was not covered or otherwise guarded, exposing employees to the hazard of falling ten feet to the concrete floor."
We opine that these citations are relevant to Wyser's accident. They both involved a lack of proper guarding and railing that exposed employees to the possibility of a fall. Both citations referred to the type of guards and railings that are required. Therefore, the prior OSHA violations were relevant, and evidence of them was properly admitted to show Sumlin's knowledge that proper railings and guards were required at all construction sites and to show that Sumlin knew, or should have known, that it was not meeting applicable OSHA standards.

Contributory Negligence
A defendant relying on the defense of contributory negligence has the burden of proving facts supporting that defense, and it is only when the facts are such that all reasonable men must draw the same conclusion that contributory negligence is ever a question of law for the court. Marquis v. Marquis, 480 So.2d 1213 (Ala.1985). Although contributory negligence may be found to exist as a matter of law, the question of the existence of contributory negligence is normally one for the jury. Bridges v. Clements, 580 So.2d 1346 (Ala 1991); Knight v. Seale, 530 So.2d 821 (Ala.1988).
Sumlin contends that Wyser created the circumstances that caused his injury and, therefore, must be found to have been contributorily negligent and to have assumed the risk of injury. We disagree. The record shows that Sumlin failed to offer substantial evidence of contributory negligence or assumption of the risk.
The judgment is reversed and the cause is remanded with instructions to reinstate the judgment of $500,000 in favor of Wyser.
REVERSED AND REMANDED.
BUTTS, J., concurs.
SHORES, HOUSTON, KENNEDY, and COOK, JJ., concur in the result.
HOOPER, C.J., and MADDOX, J., concur in part and dissent in part.
HOUSTON, Justice (concurring in the result).
Based upon the wording of the order, I am persuaded that a new trial was timely granted. I am also convinced that the trial court erred in remitting the compensatory damages award. Pitt v. Century II, Inc., 631 So.2d 235 (Ala.1993); Werner v. Henderson, 600 So.2d 1005 (Ala.1992); Bridges v. Clements, 580 So.2d 1346 (Ala.1991). Wyser suffered injuries to his left leg and knee. At the time of the injury, Wyser was a 33-year-old *239 electrician, with a 47-year life expectancy. As a result of the injury, he sustained a 20% permanent partial disability to the lower left extremitya 6% impairment to the body as a whole. He is restricted from doing work that requires him to kneel, squat, climb, crawl, or work at heights. He has undergone two operations on his knee, and he may undergo surgery in the future for additional ligament repair. His past medical expenses exceeded $22,000. He had lost substantial wages before the trial. He had been paid $10 per hour before the injury, and he was paid $5 per hour for the only work that he has been able to do since the injury (which was for only a two-month period). Wyser's wife has been the income producer for the family since his injury, and he stays home and takes care of the children. Wyser sleeps only three or four hours a night. The testimony as to pain and suffering was extensive and believable. He hurts on a daily basis. He has developed lower back problems and early arthritis because of an inability to walk without a limp.
I will go to the mat to uphold a jury's compensatory damages award, if there is no reversible error. See Wilson v. Dukona Corp., N.V., 547 So.2d 70, 73 (Ala.1989).
MADDOX, Justice (concurring in part, dissenting in part).
Like Justice Houston, I am also persuaded that the trial court, within the time allowed by Court rule, granted a new trial in this case. Rule 59.1, Ala.R.Civ.P., provides that a motion for a new trial must be ruled upon within 90 days or else it will be deemed denied.
In this case, the record shows that the trial court entered this order within 90 days after the motion was filed:
"It is hereby ordered, adjudged and decreed by this Court that the Motion for New Trial is denied. Judgment of the jury is remitted to ($125,000) One Hundred Twenty-Five Thousand Dollars. If the Plaintiff refuses to accept the remittance a new trial will be ordered."
Five days after this order was entered, the plaintiff objected to the remittitur; and seven days later (97 days after the filing of the motion), the trial judge set aside the verdict and ordered a new trial. In view of these facts, it seems clear to me that the trial court's order on the motion was entered within the time allowed, specifically, that it was entered 85 days after the motion was filed. The order provided the plaintiff with an option of accepting the remittitur, but also stated that a refusal to accept would result in a new trial. It was at this point that the motion was disposed of; this order was well within the 90 days allowed by Rule 59.1. The fact that the trial court gave the plaintiff an opportunity to accept a remittitur or have a new trial ordered in no way changes the fact that the court disposed of the motion within the time allowed by Rule 59.1.
Rule 59(f) provides that the trial court "may, on motion for new trial, require a remittitur as a condition to the overruling of the motion for new trial." Rules 59 and 59.1, like all other Rules of Civil Procedure, should be construed in light of Rule 1(c), which states that "[t]hese rules shall be construed to secure the just, speedy and inexpensive determination of every action."
Remittitur practice in Alabama has not been without confusion. In regard to remittitur, I wrote for the Court, in General Motors Corp. v. Edwards, 482 So.2d 1176 (Ala. 1985):
"Remittitur has been recognized in Alabama for many years as a legitimate device to end litigation. Rule 59(f), Ala.R.Civ.P., promulgated by this Court, expressly provides that `[t]he [trial] court may, on motion for new trial, require a remittitur as a condition to the overruling of the motion for new trial ...,' but provides that `the acceptance of [the] remittitur by the plaintiff shall not prejudice his right to raise, on appeal by the defendant, his right to have the verdict reinstated in its full amount.' This Court is also independently authorized to require remittitur in an appropriate case. Code 1975, § 12-22-71, provides:
"`When an appeal is taken to the appropriate appellate court from the judgment of any court and the appellate court shall be of the opinion that the *240 case should be reversed because the judgment of the lower court is excessive and that there is no other ground of reversal, the appellate court shall notify the appellee of the amount which it deems in excess of the just and proper amount of recovery and require the appellee, within a time to be stated in said notice, to remit such amount upon penalty of a reversal of the case. If the appellee does not, within the time stated in such notice or within such further time as may be granted by the court for good reason file a remittitur of such excessive amount, the appellate court shall reverse and remand the case; but, if the appellee shall file with the court a remittitur of the amount deemed excessive by the court, the appellate court shall reduce the amount of the judgment accordingly and shall affirm the case and enter a judgment for such reduced amount, which judgment so entered shall be and remain the judgment of the lower court and shall date back to the time of the entry or rendition of the judgment in the lower court.'
"In various cases, this Court has generally followed the principle that a trial court is accorded a large measure of discretion in determining whether to grant a remittitur. Todd v. United Steelworkers of America, 441 So.2d 889, 892 (Ala.1983). We have also generally held that when a trial court exercises its discretion to order a remittitur, its decision is presumed correct and will not be reversed on appeal absent evidence of an abuse of discretion. Id.

"Illustrative of the action this Court has taken in cases involving claims of excessive judgments, are the following:
"The trial court ordered remittitur, and this Court affirmed: Todd v. United Steelworkers of America, AFL-CIO, 441 So.2d 889 (Ala.1983); Winchester v. McCulloch Brothers Garage, Inc., 388 So.2d 927 (Ala. 1980); International Resorts, Inc. v. Lambert, 350 So.2d 391 (Ala.1977); Stead v. Blue Cross-Blue Shield of Alabama, 346 So.2d 1140 (Ala.1977); Taylor v. Birmingham News Co., 341 So.2d 689 (Ala.1977); Holcombe v. Whitaker, 294 Ala. 430, 318 So.2d 289 (1975).
"The trial court ordered remittitur and this Court reversed: Shiloh Construction Co. v. Mercury Construction Corp., 392 So.2d 809 (Ala.1980); B & M Homes, Inc. v. Hogan, 376 So.2d 667 (Ala.1979); Alabama Farm Bureau Mutual Casualty Insurance Co. v. Guthrie, 338 So.2d 1276 (Ala.1976).
"The trial court refused to grant remittitur and this Court affirmed: American Pioneer Life Insurance Co. v. Sandlin, 470 So.2d 657 (Ala.1985); White v. Fridge, 461 So.2d 793 (Ala.1984).
"The trial court refused to grant remittitur and this Court reversed: Coca-Cola Bottling Co., Montgomery v. Parker, 451 So.2d 786 (Ala.1984); Gulf Atlantic Life Insurance Co. v. Barnes, 405 So.2d 916 (Ala. 1981); General Electric Credit Corp. v. Alford & Associates, Inc., 374 So.2d 1316 (Ala.1979); San-Ann Service Inc. v. Bedingfield, 293 Ala. 469, 305 So.2d 374 (1974); Foodtown Stores, Inc. v. Patterson, 282 Ala. 477, 213 So.2d 211 (1968).
"As can readily be seen by a review of these cases, this Court has not yet adopted specific standards for courts to apply in granting or denying remittitur. We believe that the time has come for this Court to study the remittitur practice in Alabama, and to adopt a rule or rules of practice which would ensure the protection of the jury system and the parties' right to a jury trial, but which would also protect the public's interest in decreased court costs and a speedy and just determination of every case upon the merits. We do not adopt those standards in this case, because to do so would effect a major change in current remittitur practice, and such a major change should be adopted only after adequate notice and deliberate study by the full Court.
"The Court considered the possibility of remanding this cause to the trial court, with directions, to require the trial judge to state what may have induced the verdicts which he found to be excessive, but we are convinced that present law does not require that the trial judge state any reasons *241 why he granted remittitur. In Williams v. Williams, 283 Ala. 292, 295, 216 So.2d 181, 183 (1968), this Court held:
"`The amount of damages awarded in the verdict and judgment, in the light of the facts disclosed by the evidence, often furnishes the determining data. Sturdivant v. Crawford et al., 240 Ala. 383, 199 So. 537. Where a court concludes that damages are inadequate, or excessive, it is not necessary that it declare what may have induced a wrongful award in the amount of damages assessed.'
"... This Court has long recognized that appellate review of remittitur `involves a review of [the] trial court's judgment based upon [the trial judge's] observation of all the witnesses who testified in the case and other incidents of the trial which cannot be reflected in the transcript and which are not available for observation by us.' Airheart v. Green, 267 Ala. 689, 693, 104 So.2d 687, 690 (1958).
"In Airheart, this Court did conclude that in a case involving our homicide statute, as this case does, `the amount of the verdict and the severity of the punishment are graded according to the degree of culpability....' 267 Ala. at 693, 104 So.2d at 691. The trial judge very well may have applied the Airheart rule in this case.
"For an excellent discussion of the subject of remittitur in Alabama, see Commentary, Remittitur Practice in Alabama, 34 Ala.L.Rev. 275 (1983)."
482 So.2d at 1198-1200.
Later, the Court was faced with an issue very similar to the one presented in this case. Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), presented an appeal and a cross appeal arising out of a trial court's order of a new trial, conditioned upon the plaintiff's refusal to accept a remittitur of compensatory damages. In Hammond, the Court adopted standards for trial courts to follow when requiring a remittitur of a jury verdict. In adopting such standards the Court stated:
"The jury returned a verdict of $12,000. The trial court ordered a remittitur of all but $2,000 without an explanation for its arriving at this particular sum. Thus, we are again asked to review a trial court order which has reduced a jury verdict without any explanation of the criteria utilized in doing so. In General Motors Corp. v. Edwards, 482 So.2d 1176 (Ala.1985), when similarly situated, a majority of the Court expressed its discomfort with deciding the propriety of trial court action without any established standards for the trial court's guidance and suggested that our Advisory Committee on Rules of Civil Procedure be called upon to suggest appropriate standards. Further deliberation has convinced us that the responsibility to adopt standards lies with this Court.
"We begin by recognizing that the right to a trial by jury is a fundamental, constitutionally guaranteed right, Art. I, § 11, Const. of 1901, and, therefore, that a jury verdict may not be set aside unless the verdict is flawed, thereby losing its constitutional protection. It is only in those cases that a trial court, pursuant to A.R.Civ.P. 59(f), and this Court, pursuant to Code 1975, § 12-22-71, may interfere with a jury verdict. Insofar as damages are concerned, a jury verdict may be flawed in two ways. First, it may include or exclude a sum which is clearly recoverable or not as a matter of law, or which is totally unsupported by the evidence, where there is an exact standard or rule of law that makes the damages legally and mathematically ascertainable at a precise figure. In these situations, a trial court may, and should, reduce or increase the amount of the verdict to reflect the amount to which the parties are entitled as a matter of law. Second, a jury verdict may be flawed because it results, not from the evidence and applicable law, but from bias, passion, prejudice, corruption, or other improper motive. It is this category of cases that most troubles both trial and appellate courts.
"The cases have consistently held that in deciding whether a jury verdict is excessive because it is the result of passion, bias, corruption, or other improper motive, a trial judge may not substitute his judgment for that of the jury. B & M Homes, Inc. v. Hogan, 376 So.2d 667 (Ala.1979); Vest v. Gay, 275 Ala. 286, 154 So.2d 297 *242 (1963). We have also recognized that the trial judge is better positioned to decide whether the verdict is so flawed. He has the advantage of observing all of the parties to the trialplaintiff and defendant and their respective attorneys, as well as the jury and its reaction to all of the others. There are many facets of a trial that can never be captured in a record, so that the appellate courts are at a special disadvantage when they are called upon to review trial court action in this sensitive area, although increasingly they are required to do so. Therefore, it is not only appropriate, but indeed our duty, to require the trial courts to reflect in the record the reasons for interfering with a jury verdict, or refusing to do so, on grounds of excessiveness of the damages.
"Our cases reflect a number of factors which are appropriate for the trial court's consideration: The culpability of the defendant's conduct, Ridout's-Brown Service, Inc. v. Holloway, 397 So.2d 125 (Ala.1981); the desirability of discouraging others from similar conduct, Ford Motor Credit Co. v. Washington, 420 So.2d 14 (Ala.1982); the impact upon the parties, Alabama Power Co. v. Hussey, 291 Ala. 586, 285 So.2d 92 (1973). These are by no means exclusive. Justice may well require consideration of other factors, such as the impact on innocent third parties. We make no attempt to enumerate all of the factors which may be considered by the trial court. We instead leave that to its sound discretion. We do emphasize, however, that only where the record establishes that the award is excessive or inadequate as a matter of law, or where it is established and reflected in the record that the verdict is based upon bias, passion, corruption, or other improper motive may a trial court order a new trial or remittitur. Only by requiring that a record be made can this Court adequately discharge its role of appellate review of trial court action in either granting or refusing to grant a new trial where remittitur is granted or denied.
"In adopting this new procedure, we emphasize that no substantial rule of law is changed. A trial court may not conditionally reduce a jury verdict merely because it believes the verdict overcompensates the plaintiff; B & M Homes, Inc. v. Hogan, 376 So.2d 667 (Ala.1979); Vest v. Gay, 275 Ala. 286, 154 So.2d 297 (1963); nor may the trial court substitute its judgment for that of the jury. We also reaffirm those cases which hold that, in considering the adequacy or excessiveness of a verdict, there can be no ironclad rule, and each case must be determined by its own facts. Williams v. Williams, 283 Ala. 292, 216 So.2d 181 (1968).
"We simply now require the trial courts to state for the record the factors considered in either granting or denying a motion for new trial based upon the alleged excessiveness or inadequacy of a jury verdict. We know of no other way by which this Court can discharge fairly its role of review."
493 So.2d at 1378-79.
The defendant alleges in its brief that some evidence introduced at trial indicated that the plaintiff had received some payment from other sources and that this evidence would support a remittitur or, in the alternative, a new trial. However, the trial court did not state any findings in the order to suggest why he granted the new trial or why it was conditioned on the acceptance of the remittitur.
Based on the foregoing, I cannot agree with the majority to reinstate the verdict. Because the record is silent as to the trial court's rationale for ordering the remittitur or new trial, I would remand this case for a Hammond hearing, so that this Court would have the benefit of a record containing the trial court's reasons for the ordering the remittitur. Only then could this Court properly decide whether the remittitur was appropriate or whether the jury verdict should be reinstated.
Thus, I must respectfully dissent from the judgment entered on the direct appeal (1940661), but I concur with the majority as to the cross appeal (1940742).
HOOPER, C.J., concurs.

*243 On Application for Rehearing

INGRAM, Justice.
APPLICATION OVERRULED. NO OPINION.
SHORES, HOUSTON, KENNEDY, COOK, and BUTTS, JJ., concur.
HOOPER, C.J., dissents, with opinion.
MADDOX, J., dissents.
HOOPER, Chief Justice (dissenting):
I would grant the application for rehearing in order to reverse the trial judge's denial of the defendant's motion for directed verdict based upon the defense of contributory negligence.
"The law in Alabama is quite clear that while it is no defense to a claim based on wanton misconduct on the part of the defendant, contributory negligence is a complete defense to an action based on negligence."
Rowden v. Tomlinson, 538 So.2d 15, 18 (Ala. 1988); and see John R. Cowley & Brothers, Inc. v. Brown, 569 So.2d 375 (Ala.1990).
According to the record, Wyser had worked at the Metro Jail site for approximately six months before this accident and, therefore, knew his way around the work site. Wyser's supervisor told him not to turn off the power inside the work site, but to get another worker to turn the circuits off so that Wyser would not have to walk back to his work site in the dark. Nevertheless, on the day of the accident, Wyser left his work site and turned off the circuits by himself. Wyser knew that the result would be a dark building and that he would have to walk back to his work site in the dark. Wyser did not provide himself with a flashlight, but attempted to walk back to his work site in the dark. Wyser admitted that he made mistakes, e.g., turned too early and did not watch where he was walking. He was looking up when he entered the dark doorway to what he thought was the electrical room, but which was in fact the elevator shaft.
The evidence of contributory negligence in this case is clear and undisputed. Therefore, I would hold that the trial judge erred in denying the defendant's motion for a directed verdict. Accordingly, I would grant the application for rehearing.