305 So.2d 374

**SAN-ANN SERVICE INC., a corporation**

v.

**Mack BEDINGFIELD and Mary Bedingfield.**

**SC 539.**

Supreme Court of Alabama.

Nov. 27, 1974.

Rehearing Denied Jan. 9, 1975.

T. J. Carnes, Albertville, for appellant.

Chenault & Chenault, Decatur, for appellees.

JONES, Justice.

This appeal involves two claims for damages by Mack and Mary Bedingfield (plaintiff-appellees) against San-Ann Services, Inc. (defendant-appellant)—one for breach of written lease and the second for damages to the leasehold sustained during the lease period. The Circuit Court of Morgan County, sitting without a jury, rendered a judgment of $19,150.00 in favor of the Bedingfields. San-Ann now claims that the trial Court misapplied certain legal principles to the facts and awarded excessive damages.

It is undisputed that in June, 1962, the Bedingfields leased a service station to San-Ann for a ten-year period at $250.00 a month. San-Ann paid the rent until March 1, 1968, although the lease by its terms was not to expire until May 31, 1972. The lease provided that lessee would "maintain the building, grounds, and equipment . . . in a good and sound condition . . .". San-Ann admits the existence and duration of the lease agreement, but claims that it was cancelled by all of the parties thereto and abandoned by San-Ann pursuant to a March, 1968, oral agreement whereby San-Ann was to purchase the property from the Bedingfields. The purchase agreement was contingent upon the Bedingfields' being able to provide clear title, a title insurance policy, and a survey.

San-Ann allegedly tendered a check for the purchase price, but the Bedingfields never tendered any deed or title policy although various attorneys were hired to perfect the title in order to carry out the sales agreement. San-Ann maintains that it persisted in its willingness to purchase the property, and the Bedingfields contend that San-Ann through its attorney withdrew the offer of purchase.

In August, 1968, San-Ann abandoned the property, but no demand for rent was made on them from March, 1968 (date when the last rent payment was made), until May, 1972, the expiration date of the lease. At that time the Bedingfields entered the premises and found that certain articles of property were removed from the subject premises, including four gasoline pumps,

bathroom fixtures, a drinking fountain, an air compressor, lights, etc., and that the state of the building and grounds was in great disrepair.

Appellant's eleven assignments of error, when analyzed in conjunction with those assignments substantially argued, raise two separate issues dispositive of this appeal:

1. Did the trial Court err in not ruling as a matter of law that the lease was cancelled by the conduct of the parties?

2. Is the judgment in the amount of $19,150.00 supported by competent evidence?

We answer both questions in the negative. The judgment below is affirmed on the condition that the plaintiffs file with the Clerk of this Court within 30 days a remittitur for all sums in excess of $17,495.29. In the event plaintiffs fail to file such remittitur, this cause shall be reversed and remanded for a new trial.

As to the first issue (cancellation), San-Ann's argument is three-fold: (1) The lease agreement was rescinded (by implication) by the parties, and the non-payment of rent abandoned the lease by mutual consent. (2) The lease agreement was rescinded as a matter of law. This is to say, the oral agreement for the sale of the property rescinded the lease. (3) The lease was abandoned by the parties by the lack of any action to indicate the existence of the lease for four years.

The Bedingfields counter with the claim that the lease, and lessee's duty to pay rent thereunder, was in effect for the full term of the lease period. An oral contract, say the Bedingfields, for the sale of the lease property, being violative of the Statute of Frauds (Tit. 20, § 3), would not act to rescind such written lease when the contract of sale was never consummated; and the continued possession of land by a lessee who contracts to purchase is insufficient to comply with the requirement that the purchaser be put in possession of the subject land to avoid the operation of the Statute of Frauds, citing Rowell v. Rowell, 226 Ala. 364, 147 So. 141 (1933).

On the one hand, we agree that a parol, executory agreement for the purchase of an interest in land is invalid under the Statute of Frauds. Pierce v. Murphree, 274 Ala. 20, 145 So.2d 207 (1962); Spruiell v. Stanford, 258 Ala. 212, 61 So. 2d 758 (1952). On the other hand, we likewise agree with San-Ann's position that the agreement to sell the property would be a factor which the trial Court could consider in determining whether the lessor intended to rescind the lease contract. But it does not necessarily follow that such an agreement, although not precluded from the trial Court's consideration, would nullify another existing contract (the lease agreement) as a matter of law.

To resolve this issue, we must consider if inactivity on the part of the lessor through his failure to demand rent due rescinds the lease by implication. Admittedly, a contract may be rescinded or discharged by acts or conduct of the parties inconsistent with the continued existence of the contract and mutual assent to abandon a contract may be inferred from the attendant circumstances and conduct of the parties.

San-Ann relies on John F. Clark & Co. v. Nelson, 216 Ala. 199, 112 So. 819 (1927), in which the Court stated:

" 'The agreement to rescind need not be expressed. Mutual assent to abandon a contract, like mutual assent to form one, may be inferred from circumstances. Therefore, if either party without right claims to rescind the contract, the other party need not object, and, if he permits it to be rescinded, it will be done by mutual consent.' 3 Williston on Contracts, § 1826.

" 'So a contract will be treated as abandoned when the acts of one party inconsistent with its existence are acquiesced in by the other.' 13 C.J. 601."

See also Yale Co-operative Corporation v. Rogin, 133 Conn. 563, 53 A.2d 383 (1947), and Moline Jewelry Company v. Crew, 171 Ala. 415, 55 So. 144 (1911).

■ To rescind a contract, however, the minds of the parties thereto must meet in an agreement or mutual release fully settling all rights under the contract. Reliance Life Insurance Co. v. Garth, 192 Ala. 91, 68 So. 871 (1915).

■ The question of whether the Bedingfields acquiesced in San-Ann's abandonment of the subject premises is primarily a question of fact. The intention on the part of the Bedingfields to accept the abandonment of the property and to terminate the lease is generally a question to be determined by the trial court. Cobb v. Lee, 44 Ala.App. 277, 207 So.2d 143 (1968).

■ Here, the case was tried before the Court without a jury; the evidence was heard ore tenus; and the trial Court had ample opportunity to hear the testimony and observe the demeanor of the witnesses. While we recognize the general rule that a contract will be treated as abandoned or rescinded where the acts and conduct of one party inconsistent with its existence are acquiesced in by the other party, this rule can be given operative effect only when such acts and conduct of the one and the acquiescence of the other are found by the trier of the facts to be positive and unequivocal. The trial Court's judgment adverse to San-Ann, evincing a contrary finding, is in our opinion fully supported by the evidence.

■ Where the judgment of the court is supported by competent evidence, unless it is plainly erroneous and contrary to the weight of the evidence, then it is to be affirmed. Sterling Oil of Oklahoma, Inc., et al. v. Pack et al., 291 Ala. 727, 287 So.2d 847 (1973); First National Bank of Birmingham v. Brown, 287 Ala. 240, 251 So.2d 204 (1971). Furthermore, the finding of the trial court without a jury has the effect of a jury verdict and, if supported by competent evidence, will not be disturbed unless plainly erroneous. Water Works Board of the Town of Parrish v. White, 281 Ala. 357, 202 So.2d 721 (1967). After careful consideration, the issue of the amount of damages aside, we are not convinced that the judgment below is contrary to the weight of the evidence nor is it plainly erroneous.

■ As to the second issue, we agree with San-Ann's contention that the burden of proof is on the plaintiff and that the evidence does not support the full amount of the judgment in the sum of $19,150.00. The principal amount of the rent due plus interest to the date of trial was $16,283.29. Under the second claim for damages to the leasehold, the evidence sufficient to support an additional award of damages is confined to the following items:

| 4 Gas pumps | $1,000.00 |
|---|---|
| Bathroom fixtures | 100.00 |
| 1 Air Compressor | 12.00 |
| 1 Drinking Fountain | 100.00 |
| Total | $1,212.00 |

■ This figure of $1,212.00, when added to the rent of $16,283.29, produces the total amount of damages under both claims in the sum of $17,495.29, or $1,654.71 less than the amount awarded—$19,150.00. See Holcombe & Bowden et al. v. Reynolds, 200 Ala. 190, 75 So. 938 (1917).

We therefore affirm on the condition that plaintiffs within 30 days hereof file with the Clerk of this Court a remittitur for all sums exceeding in amount of $17,495.29; otherwise, this cause is to be reversed and remanded for a new trial.

Affirmed conditionally.

HEFLIN, C. J., and COLEMAN, BLOODWORTH and McCALL, JJ., concur.