**BLOCK 175 CORPORATION, a Colorado corporation, Plaintiff,**

v.

**FAIRMONT HOTEL MANAGEMENT COMPANY, a California corporation, and Fairmont Hotel Company, a California corporation, Defendants.**

Civ. A. No. 86–K–2358.

United States District Court,
D. Colorado.

Nov. 26, 1986.

G. Kevin Conwick and Vicki E. Baer, Holme Roberts & Owen, Denver, Colo., for plaintiff.

John J. Mullins, Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., and Melvyn I. Mark, Thomas M. Bruen, Titchell, Maltzman, Mark, Bass, Ohleyer & Mishel, San Francisco, Cal., for defendants.

### MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY COURT PROCEEDINGS

KANE, District Judge.

*Background*

This diversity-based breach of contract action was brought by the owner of the Denver Fairmont Hotel against the hotel's management company. The motion before me involves a point of law not previously decided by the Tenth Circuit Court of Appeals. Hence, I write this memorandum opinion and order.

The complaint is a salvo of fifteen claims for relief: breach of fiduciary duty, seven claims for breach of agreement, anticipatory repudiation, intentional or reckless breach of duty (punitives), accounting for funds, restitution, constructive trust, injunction (seemingly both preliminary and permanent), and declaratory judgment. The response has been to "Cry 'Havoc!' and

let slip the dogs of war." [1] The tone of the voluminous pleadings filed to date does not augur well for a peaceful armistice.

On March 9, 1977, an entity called Oxford-Anschutz executed a contract with defendant FHC for management of the Denver Fairmont. In 1985, Oxford sold its ownership interest in the hotel to the plaintiff, Block 175. The management contract does not expire until the end of 2009. (That the parties assumed continued existence for 32 years is the only note of optimism to be heard in their discord.)

According to the complaint, FHC was dissolved this past September. FHMC is now managing the hotel. Block 175 professes to be nonplussed by FMHC's authority to act under the management contract. Richard Rhoads, a corporate officer of both defendants, strives to allay plaintiff's anxiety in an affidavit attached to defendants' motion to compel arbitration. Rhoads avers assignment by FHC, to FHMC, of all rights and duties under the management contract. The assignment, he swears, was executed in compliance with the terms of the management contract as amended by the original parties on October 20, 1978.

On November 12, plaintiff moved for expedited discovery in the case. I granted this motion via minute order. The motion contained an argument denying the existence of an agreement to arbitrate. Alternatively, the motion also argued that even if an agreement to arbitrate did exist, discovery must go forward nonetheless. Attached to the motion as exhibit G was an affidavit by one Harry Henke III, senior V–P of Oxford. Henke states that the arbitration clause of the agreement was

> never intended to establish arbitration as the exclusive remedy for settling disputes; to my understanding the agreement was carefully drafted to reflect this fact. The use of the word "may" designates arbitration as one of several options. It does not require that arbitration be elected or even considered at all.

On November 14, defendants filed the motion to compel arbitration and to stay court proceedings. On the same day, I denied defendant's motion for a protective order to end the expedited discovery and to stay discovery pending the results of today's hearing. On November 21, defendants moved to strike the Henke affidavit on the grounds it contains inadmissible evidence and is legally conclusory.

## Motion to Compel

The arbitration clause is housed in article XI of the management contract. In pertinent part, the text runs as follows:

> If any controversy, disagreement or dispute should arise between the parties in the performance, interpretation and application of this Agreement which involves accounting matters, either party may serve upon the other a written notice stating that such party desires to have the controversy, disagreement or dispute reviewed by an arbitrator, . . . .
>
> If any controversy, disagreement or dispute should arise between the parties in the performance, interpretation, or application of this Agreement, involving any matter other than an accounting matter within the scope of the preceding paragraph, either party may serve upon the other a written notice stating that such party desires to have the controversy, disagreement, or dispute reviewed by a board of three (3) arbitrators . . . .

The enforcement of the arbitration is to be determined under the provisions of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. As a threshold matter, the act applies only to "maritime transactions" and to "commerce." Commerce means, in part, "commerce among the several States." 9 U.S.C. § 1. Since FMHC is a California corporation while Block 175 is a Colorado corporation, and since the hotel business is designed to accomodate interstate travelers, there is no problem satisfying this threshold requirement. Neither side raises it as an issue in the briefs.

---

1. Shakespeare, *Julius Caesar*, III, i, 273.

Section 2 of the arbitration act states the arbitration clause "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Section 4 of the act further provides: "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."

Thus, my inquiry "is limited to 'issues relating to the making and performance of the agreement to arbitrate.'" *Parcel Tankers, Inc. v. Formosa Plastics Corp.,* 569 F.Supp. 1459, 1466 (S.D.Texas 1983), *remanded on other grounds,* 764 F.2d 1153 (5th Cir.1985), quoting from *Prima Paint Corp. v. Flood & Conklin Mfg Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). Interpretation of a valid and enforceable arbitration clause should be left up to the arbitrator. "[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT & T Technologies, Inc. v. Communications Workers of America,* — U.S. —, —, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648, 656 (1986).

In the case at bar, neither party has made any allegations casting aspersions on the validity of any portion of the management agreement, including the arbitration clause. The clause, therefore, should be enforced as written as a matter of arbitration law. Moreover, the language of the clause is clear and unambiguous, and so must be enforced as written under basic principles of contract law. *Lowell Staats Mining Co. v. Pioneer Uravan, Inc.,* 596 F.Supp. 1428, 1430 (D.Colo.1984).

Plaintiff contends the presence of the word "may" in the arbitration clause renders arbitration permissive and not mandatory. A common sense reading of the clause belies this contention. When either party elects to arbitrate and serves the proper notice, as was done here, then arbitration must ensue. Plaintiff's argument has been addressed in other courts and found to lack merit. For example, in *Held v. National R.R. Passenger Corp.,* 101 F.R.D. 420 (D.D.C.1984), the court wrote: "In short, the use of the word 'may' in an arbitration agreement does not imply that the parties to the agreement have the option of invoking some remedy other than arbitration. Rather, '[t]he sole option an aggrieved party retained through use of the word 'may' was to abandon its claim.'" *Id.* at 424 (citation omitted). The cases cited by plaintiff to the contrary are not applicable. *See, e.g., Jamaica Commodity Trading Co. v. Connell Rice & Sugar Co.,* No. 85–Civ–1210–CSH (S.D.N.Y. 5/24/85), slip op. [Available on WESTLAW, DCTU database] (contract disputes "may be settled by mutual consent").

Since the clause here is enforceable, the court is bound by section 3 of the arbitration act. That section states, in full:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

The next question I face is how much of the plaintiff's cause of action is to be sent to arbitration. The language of the arbitration clause is very broad. It covers any "controversy, disagreement or dispute" arising "in the performance, interpretation and application" of the management agreement. Certainly all fifteen of plaintiff's claims here arise from defendant's performance of the management contract.

Moreover, claims 11, 12, and 13 (accounting, restitution and constructive trust) are probably arbitrable in and of themselves under the first paragraph of the clause.[2] "[T]he courts have taken a liberal attitude in interpreting the scope of arbitration clauses." *Lawson Fabrics, Inc. v. Akzona, Inc.*, 355 F.Supp. 1146, 1148 (S.D.N.Y. 1973), *affirmed without opinion*, 486 F.2d 1394 (2d Cir.1973) (action stayed pending arbitration even though complaint raised federal statutory claims along with common law claims, since all claims arose from sales contract and arbitration clause was sweeping in breadth).

Plaintiff nevertheless argues for exclusion from arbitration, at the very least, of its non-contractual claims. There is little merit to that position under the facts of this case. The court unquestionably retains jurisdiction over a case sent to arbitration, and so can grant a preliminary injunction as a preventive measure to preserve the status quo during the pendency of arbitration. *Knorr Brake Corp. v. Harbil, Inc.*, 556 F.Supp. 489, 494 (N.D.Ill. 1983). However, plaintiff cannot use its fourteenth claim (injunction) to hide under the mantle of *Knorr*, because here plaintiff seeks an injunction as an affirmative remedy.

Moreover, plaintiff's first claim (breach of fiduciary duty), although a tort, is not automatically exempt from a contractual arbitration clause. *See Harman Electrical Construction Co. v. Consolidated Engineering Co.*, 347 F.Supp. 392, 396 (D.Del. 1972) (clause calling for arbitration if either contracting party should "suffer damages because of the wrongful act or neglect of the other party" applies to damages resulting from a contract breach as well as to tort claims arising from mishaps during construction of the building). Thus, the entire complaint can be transferred to arbitrators.

### Discovery

The submission of the complaint, or any parts of it, to an arbitrator, however, must be tempered by discovery considerations. "As a general rule, discovery as to arbitrable disputes is denied except upon a showing of need." *Drulcrest Pty. Ltd. v. Jamar Productions, Inc.*, No. 85 Civ. 2174 (4/11/86), slip op. at 4 [Available on WESTLAW, DCTU database]. *Accord Mississippi Power Co. v. Peabody Coal Co.*, 69 F.R.D. 558, 567 (S.D.Miss.1976). The question, however, is to be resolved with reference to the underlying purposes of arbitration. *See Recognition Equipment, Inc. v. NCR Corporation*, 532 F.Supp. 271, 275 (N.D.Texas 1981) (denying discovery since purposes of arbitration are "to facilitate and expedite the resolution of disputes, ease court congestion, and provide disputants with a less costly alternative to litigation"). Some courts have permitted discovery to proceed in the face of arbitration "where the taking of the discovery would not unnecessarily delay the arbitration proceedings and the plaintiff could obtain evidence to prove his case to the arbitrators that was otherwise unavailable." *Drulcrest*, slip op. at 4.

In the instant case, I have already evinced an inclination to expedite the course of the litigation by refusing to succumb to defendants' requests to delay discovery. I will continue to follow this course. To prevent this strategy from backfiring, I will put a time limit on the arbitration. This is the same course I took with *Otis Armstrong v. Bert Bell Player Retirement Plan, et al.*, 646 F.Supp. 1094 (1986), where arbitration actually became a dilatory tool rather than a facilitator of case resolution. As a result of sad experience with delay in other arbitrations, I will probably continue to impose time limits.

Arbitrators have power, under 9 U.S.C. § 7, to call witnesses and to subpoena records and documents. Thus, arbitration has a limited type of discovery of its own.

---

**2.** Under the arbitration clause, the accounting claims should be heard by only a single arbitrator, whereas the other claims should be decided by a panel of three. This appears to be a rather wasteful scheme, but the parties have clearly agreed to it. I suggest resolution by having the chairperson of the panel act simultaneously as the single arbitrator on the accounting claims.

The advantage to arbitration discovery is that it puts some teeth into the arbitration clause and fulfills the policy behind the federal arbitration act. The disadvantage is that it militates against speedy resolution of the controversy if the parties immerse themselves in a sea of discovery. The pivotal consideration is that controlled arbitration promotes judicial economy. As my motion list grows despite my best efforts to the contrary, I have come to see new meaning in that term. The more the arbitrators do, the less I have to do. Also, the more the arbitrators do, the more the parties have to pay. Judges work without charge; arbitrators do not.

### Order

The arbitration clause is fully enforceable. The entire case shall be sent to arbitration because the clause is very broadly worded and all the claims in the complaint arise from the performance of the management contract. Discovery by written or oral deposition may continue in this court. To avoid the concurrency of arbitration and discovery leading to untoward delay, I order the arbitration to be completed and an award made by March 26, 1987. I will not permit discovery to delay the arbitration. I will impose sanctions where necessary. If arbitration is not completed as ordered, I will recall the case and inquire into the reasons for its failure. Finally, consideration of the Henke affidavit is not a significant issue, and hence the motion to strike the affidavit is granted.