Erlinda S. McCREA, M.D., & Ava Nelson–Napper, M.D.

v.

DRS. COPELAND, HYMAN & SHACKMAN, P.A., et al.

Civil No. Y–96–1033.

United States District Court, D. Maryland.

Nov. 15, 1996.

James P. Gillece, Jr., Deborah L. Zimic, Asuncion Cummings, and Miles & Stockbridge, Baltimore, MD, for Defendants.

Bruce S. Harrison, Elizabeth Torphy–Donzella, and Shawe & Rosenthal, Baltimore, MD, for Defendant Franklin Square Hospital Center, Inc.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

This suit results from the termination of Erlinda S. McCrea, M.D. ("Dr. McCrea") and Ava Nelson–Napper, M.D. ("Dr. Nelson–Napper") from their positions as radiologists with Drs. Copeland, Hyman & Shackman, P.A. ("CHS") and Advanced Radiology, L.L.C. ("Advanced"). Drs. McCrea and Nelson–Napper allege they were terminated, retaliated against, and otherwise discriminated against on the basis of their sex, race, color, and national origin in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. They also allege state law claims of fraud, negligent misrepresentation, misappropriation, invasion of privacy, and unfair competition. Defendants, CHS, Advanced, and seventeen individual physicians, filed a Motion to Dismiss and to Compel Arbitration on any Remaining Claim.[1]

### I. FACTS

From 1989 to 1993, Drs. McCrea and Nelson–Napper practiced in a multi-specialty group in Towson, Maryland, known as Clinical Associates ("Clinical"). Clinical entered into a contract with another group of physicians to provide a broader range of radiology services but wanted Plaintiffs to continue providing services at the Towson facility. Consequently, Clinical authorized Drs. McCrea and Nelson–Napper to select a radiology group with which Clinical would enter into a five-year contract involving approximately $20–$25 million in radiology services.

In the fall of 1993, Drs. McCrea and Nelson–Napper selected CHS as the radiology

Lawrence Z. Lorber, J. Robert Kirk, Gretchen M. White, and Verner, Liipfert, Bernhard, McPherson & Hand, Washington, DC, for Plaintiffs.

---

1. Drs. McCrea and Nelson–Napper also named Franklin Square Hospital, Inc. ("Franklin Square") as a Defendant. Franklin Square has filed a Motion to Dismiss or Alternatively for Summary Judgment. The Motion is not addressed by the Court at this time.

group to service Clinical and entered into employment agreements with CHS, which contained an arbitration provision. Subsequently, CHS was acquired by Advanced on or about January 1, 1995.[2]

Plaintiffs allege that from the beginning of their employment with CHS and Advanced they were subjected to differential, adverse treatment based on their sex, race, color, and national origin. On August 20, 1995, they delivered letters to their physician colleagues describing the discrimination they suffered and indicating their intention to file formal charges with the Equal Employment Opportunity Commission ("EEOC").

Dr. McCrea filed charges with the EEOC on September 14, 1995, was terminated October 24, 1995, and amended her EEOC charges December 11, 1995. Dr. Nelson–Napper filed charges with the EEOC on November 8, 1995, ended her employment March 1, 1996, and amended her EEOC charges April 25, 1996. After obtaining right to sue letters from the EEOC, Plaintiffs filed this suit in federal court.

## II. *DISCUSSION*

The Supreme Court has held that it is inappropriate for a court to rule on the potential merits of any of the underlying claims when deciding whether the parties agreed to arbitration. *AT & T Technologies v. Communications Workers,* 475 U.S. 643, 649–50, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986). Accordingly, the Court will decide the Motion to Compel Arbitration before considering the other pending motions.

Congress and the Supreme Court have indicated strong support for the use of arbitration when parties agree to so resolve their disputes. *See* Federal Arbitration Act, 9 U.S.C. § 1 *et seq.; Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985) ("By its terms, the [Federal Arbitration] Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbi-

tration agreement has been signed."); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) (referring to "liberal federal policy favoring arbitration agreements.").

■ In deciding whether to enforce an arbitration agreement, the Supreme Court has established a two-step inquiry. First, the Court must determine whether the parties, in fact, agreed to arbitrate their dispute. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985). Second, the Court must determine whether the claims in dispute are within any category of claims or contracts as to which arbitration provisions are unenforceable. *Id.* at 627, 105 S.Ct. at 3354.

■ The employment agreement between Drs. McCrea and Nelson–Napper and CHS contains a broad arbitration provision which states in relevant part:

> 19. *Arbitration:* The Corporation [CHS] and the Employee [Drs. McCrea and Nelson–Napper] mutually promise and agree that if any controversy or dispute relating to this Agreement arises between them (or between the Corporation and a beneficiary), either party may petition the appropriate court of the state of Maryland for an order compelling the submission of that controversy or dispute to arbitration....

Plaintiffs argue that use of the phrase "may petition" in the arbitration provision is a fatal defect and argue that "may" is permissive and does not prevent them from pursuing their claims in the forum of their choice, i.e., federal court.

However, the Fourth Circuit has recently rejected such arguments based on the permissive character of the word "may." In *Austin v. Owens–Brockway Glass Container, Inc.,* 78 F.3d 875 (4th Cir.1996), the court interpreted an arbitration provision which stated that "[a]ll disputes ... may be referred to arbitration" as giving an aggrieved

---

**2.** Drs. McCrea and Nelson–Napper claim CH & S was the largest single owner of Advanced and "essentially 'became' Advanced." (Pls.' Mem.

Opp'n Defs.' Mot. to Dismiss or Compel Arbitration at 6).

party the option of choosing arbitration or abandoning the claim. *Id.* at 879. The court concluded that interpreting the language of the arbitration provision as permissive would render it "meaningless for all practical purposes." *Id.* Other circuits have construed similarly worded arbitration provisions as giving a choice of arbitration or abandonment. *See American Italian Pasta Co. v. Austin Co.,* 914 F.2d 1103, 1104 (8th Cir. 1990) ("such dispute or disagreement may be submitted to arbitration"); *Bonnot v. Congress of Independent Unions,* 331 F.2d 355, 359 (8th Cir.1964) ("either party may request arbitration"); *Deaton Truck Line, Inc. v. Local Union 612,* 314 F.2d 418, 422 (5th Cir.1962) ("the dispute may be submitted to the arbitration"). Accordingly, the Court rejects the permissive reading of the arbitration provision advanced by Plaintiffs.

■ Plaintiffs also argue for a narrow reading of the phrase "relating to this Agreement" which would limit the scope of the arbitration provision to contract claims related to the performance or breach of obligations set forth specifically in the employment agreement. The Supreme Court, however, has held that any doubt concerning the scope of an arbitration provision should be resolved in favor of arbitration given federal policy favoring arbitration. *Dean Witter,* 470 U.S. at 218, 105 S.Ct. at 1241; *see also Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.,* 767 F.2d 1140, 1145 (5th Cir. 1985) ("As a general rule, whenever the scope of an arbitration clause is in question, the court should construe the clause in favor of arbitration."). This Court's discretion to refuse to compel arbitration is limited. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960).

■ Accordingly, the Court rejects the narrow reading of "relating to this Agreement" advanced by Plaintiffs and finds the arbitration provision extends to all disputes arising out of the employment relationship between Drs. McCrea and Nelson–Napper and CHS. The federal employment discrimination claims alleged by Plaintiffs arise out of the employment relationship. Similarly, the state fraud, negligent misrepresentation, misappropriation, invasion of privacy, and unfair competition relate to the circumstances under which the employment relationship commenced and terminated and, thus, are subject to arbitration. *See, e.g., Matthews v. Rollins Hudig Hall Co.,* 72 F.3d 50, 54 (7th Cir.1995) (holding fraudulent inducement claim "relat[ed] to a breach of th[e] Agreement" and was subject to arbitration); *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.,* 867 F.2d 809 (4th Cir.1989) (holding claim of fraud in the inducement constituted "[a]ny question, charge, complaint, or grievance believed to constitute a breach or violation" of the Agreement requiring arbitration).

Finding that all of the federal and state claims between Drs. McCrea and Nelson–Napper and CHS should be referred to arbitration, the Court must decide whether other parties are subject to arbitration. Plaintiffs argue that CHS is the only Defendant subject to arbitration, while Advanced and the seventeen individual physicians argue that they too should be parties to the arbitration.[3]

■ The Court finds that because Plaintiffs claim CHS "became" Advanced and Advanced adopted all of the "systems, policies and practices" of CHS (Pls.' Mem.Opp'n Defs.' Mot. to Dismiss or Compel Arbitration at 6–7), Advanced should be considered a party to the employment agreement and is a proper party in the arbitration. However, there is no evidence from which to conclude that the seventeen individual physicians were parties to the employment agreement. Thus, they are not proper parties in the arbitration.[4]

---

3. The parties appear to agree that Franklin Square should not be a party to arbitration.

4. The presence of parties in litigation who are not parties in an arbitration does not prevent the Court from compelling arbitration with respect to the parties who have agreed to arbitrate their

Having found that the parties agreed to submit the claims between Drs. McCrea and Nelson–Napper and CHS and Advanced to arbitration, the Court must determine whether the arbitration provision is enforceable. In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the Supreme Court observed that statutory claims can be resolved through arbitration unless Congress clearly evinced an intention to preclude waiver of judicial remedies. *Id.* at 26, 111 S.Ct. at 1652. The *Gilmer* Court found no evidence of congressional intent to preclude arbitration in claims under the Age Discrimination in Employment Act ("ADEA"). *Id.* at 35, 111 S.Ct. at 1656–57.

The legislative history of Title VII similarly evinces no hostility toward arbitration, and, in fact, the most recent amendment to Title VII includes a specific expression of congressional support for arbitration:

Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including ... arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title.

Civil Rights Act of 1991, Pub.L. No. 102–166, § 118, 105 Stat. 1071, 1081. Courts have consistently held that Title VII claims are arbitrable. *See, e.g., Mago v. Shearson Lehman Hutton, Inc.*, 956 F.2d 932, 935 (9th Cir.1992) (rejecting argument that Title VII evinces congressional intent to preclude arbitration in the context of privately negotiated employment contracts). Accordingly, the arbitration provision in the employment agreement is enforceable with respect to the federal employment discrimination claims of Drs. McCrea and Nelson–Napper. Similarly, no express preclusion of arbitration exists with regard to the state claims.

### III. *CONCLUSION*

Based upon the foregoing analysis, Defendants' Motion to Compel Arbitration will be granted with respect to all of the claims of Drs. McCrea and Nelson–Napper against CHS and Advanced. The case will be stayed with respect to all Defendants, including the claims. *See Tai Ping Ins. Co. v. M/V WAR-*

seventeen individual defendants and Franklin Square, until such time as the arbitration proceedings are completed.

### *ORDER*

In accordance with the attached Memorandum, it is this 18th day of November, 1996, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendants' Motion to Compel Arbitration BE, and the same IS, hereby GRANTED; and

2. That Plaintiffs and Defendants Drs. Copeland, Hyman & Shackman, P.A. and Advanced Radiology, L.L.C. SHALL SUBMIT to arbitration in accordance with the Employment Agreement; and

3. That Plaintiffs' action BE, and the same IS, hereby STAYED as to all parties pending completion of arbitration; and

4. That a copy of this Memorandum and Order be mailed to counsel for the parties.

*SCHAU,* 731 F.2d 1141, 1146 (5th Cir.1984).