Kimberly Lindsey and Gary Lindsey purchased a health-insurance policy from Celtic Life Insurance Company, through its agent Arthur T. Ferrell. Later, after Celtic Life denied payment on a claim, the Lindseys, acting separately, sued Celtic Life and Ferrell, alleging fraud, suppression, bad-faith failure to pay a claim, and breach of contract. Celtic Life and Ferrell moved to compel arbitration of the Lindseys' claims, relying on an arbitration provision contained in the Lindseys' insurance *Page 641 
policy. The trial court denied the motions to compel arbitration. Celtic Life and Ferrell, acting separately, have appealed the orders denying arbitration in the two actions filed by the Lindseys. We reverse and remand.
On March 10, 1997, Kimberly and Gary Lindsey applied for health insurance from Celtic Life, an Illinois corporation, through Celtic Life's agent, Arthur T. Ferrell. Celtic Life considered and accepted the application, and on May 1, 1997, it issued the insurance policy. Subsequently, the Lindseys incurred medical expenses that their insurance policy with Celtic Life purported to cover. Celtic Life alleges that the claims were denied because they were based on a medical condition of Mrs. Lindsey that it says preexisted the issuance of the insurance policy but was not disclosed on the application for insurance coverage. Celtic Life denied coverage to the Lindseys and purported to rescind the contract of insurance by tendering a premium refund.
With regard to preexisting conditions, the policy states:
 "Pre-existing medical conditions not disclosed on the application form may result in rescission of coverage. Rescission means an Insured's coverage is voided from the date of issue."
The policy also states:
"Claim Appeal Process
 "Though claim submissions are treated fairly based on the facts surrounding the loss, some claim decisions need further review. A claimant may have additional information which could change the decision or may want a review of the decision. There is an appeal process to provide a full and fair review of the proof of loss. Each claimant is notified of the right to appeal and of the appeal process at the time an initial claim decision is made.
"Arbitration
 "A claimant may continue to question the facts contained in the written reply to the appeal. As a further step to resolve the problem, either the claimant or Celtic Life may unilaterally invoke a right of arbitration. Arbitration is conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Or, if agreeable to both parties, modification can be made to these rules to expedite arbitration or reduce its costs.
 "The scope of the arbitrator's judgment covers any demands which the party initiating arbitration chooses to submit. Judgment upon the award rendered by the arbitrator may be entered in any court having proper jurisdiction. Judicial review is limited in accordance with applicable law.
"Legal Proceedings
 "A suit to obtain a benefit cannot be filed before 60 days following completion of all administrative procedures to recover benefits. Suit cannot be filed after more than three years from this completion date."
It is well settled that the Federal Arbitration Act preempts contrary state law and renders enforceable a predispute arbitration agreement contained in a contract that involves interstate commerce. See 9 U.S.C. § 2 and Allied Bruce TerminixCompanies v. Dobson, 513 U.S. 265 (1995). The Lindseys have conceded that the question whether the insurance policy involved and affected interstate commerce is not in dispute. The Lindseys state the issue on appeal as whether a contractual arbitration provision should be enforced after the parties to the contract have rescinded the contract.
 Rescission of the Contract
The Lindseys argue that Celtic Life rescinded the insurance contract by returning the premium to the Lindseys and, therefore, that the arbitration provision can no longer be enforced. *Page 642 
 "`Generally speaking, the effect of rescission is to extinguish the contract. The contract is annihilated so effectually that in contemplation of law it has never had any existence, even for the purpose of being broken. Accordingly, it has been said that a lawful rescission of an agreement puts an end to it for all purposes, not only to preclude the recovery of the contract price, but also to prevent the recovery of damages for breach of the contract.'"
Alabama Great So. R.R. v. Independent Oil Co., 230 Ala. 222, 224160 So. 720, 722 (1935) (quoting 6 R.C.L. § 323, p. 942).
A mutual rescission "occurs only where the acts of one party are fully acquiesced in by the other." Matthews v. Martin,394 So.2d 943, 944 (Ala. 1981) (citing San-Ann Service, Inc. v.Bedingfield 305 So.2d 374 (1974)). "[A] mutual rescission consists of the same requisite elements as a legal contract." Id.
It includes a meeting of the minds of the parties to mutually release each other from their obligation under the contract, fully settling all rights under the contract. Id.
Celtic Life purported to rescind the insurance contract it had with the Lindseys, by refunding the premium. It is not clear that the parties to the contract at issue here have mutually agreed to rescind it, and the fact that the Lindseys filed an action alleging a breach of contract suggests there was no mutual assent to abandon the contract. The Lindseys argue that there is now no contract because, they say, Celtic Life has rescinded it, and at the same time they argue that they have claims based on that contract, the very contract they argue does not exist. The Lindseys in effect seek to enforce the contract but without the arbitration provision that was contained in it. This present situation is very similar to the situation addressed by this Court in Delta Construction Corp. v. Gooden, 714 So.2d 975 (Ala. 1998), in which we stated:
 "Recently, in Ex parte Dyess, 709 So.2d 447 (Ala. 1997), four Justices, in a plurality decision, held that as a general rule a person cannot merely pick and choose the provisions in a contract that he wants to apply. In that case, Dyess sought to recover under the uninsured motorist provisions of an insurance contract and at the same time sought to avoid the arbitration provision contained in the contract. The FAA was found to apply in that case because the contract involved interstate commerce. The opinion in Dyess noted that Dyess was attempting to arbitrarily pick and choose between the provisions in the contract that were advantageous to him and the one provision he thought was not — the arbitration provision. In the present case, Gooden is attempting to do what Dyess was not permitted to do — enforce that part of his contract that is advantageous to him, but not that part that he opposes, the arbitration provision."
714 So.2d at 981. Like the plaintiffs in Dyess and DeltaConstruction, the Lindseys cannot pick and choose between provisions in the contract. Moreover, "`"challenges seeking toavoid or rescind a contract"'" containing an arbitration provision are subject to arbitration. NationsBanc Invs., Inc. v.Paramore, 736 So.2d 589, 593 (Ala. 1999) (quoting Three ValleysMunicipal Water Dist. v. E.F. Hutton Co., 925 F.2d 1136, 1140
(9th Cir. 1991)).
The trial court's order denying the motions to compel arbitration is reversed, and the cases are remanded.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, LYONS, and BROWN, JJ., concur.
SEE, J., concurs in the result. *Page 643