Marshall Durbin Farms, Inc. ("Marshall Durbin"), and Clyde Roden, an employee of Marshall Durbin, appeal from an order denying their motion to compel arbitration of the claims presented in an action commenced against them by Freddie H. Fuller and Lila J. Fuller. We affirm.
The dispute out of which this appeal arose began soon after a fire in December 1997 damaged one of three poultry houses owned by the Fullers. The Fullers had used these houses since May 1983 to grow successive flocks of chickens for Marshall Durbin "for slaughter and processing." Each flock consisted of several thousand chickens, which were delivered to the Fullers by Marshall Durbin to be grown in the Fullers' poultry houses for a "grow-out" period of approximately six weeks. At the end of the grow-out period, Marshall Durbin would pick up the chickens and ship them to a processing plant. Between 1994 and 1998, the Fullers "grew out" no fewer than 34 such flocks for Marshall Durbin.
The rights and duties of the parties during each grow-out period were governed by separate "Chicken Feeding Growing Contracts" (the "grow-out contracts"),[1] one of which appears in the record. For example, the grow-out contracts provided in ¶ 4:
 "[The Fullers] acknowledge that the execution of this Agreement does not create a continuing relationship between [Marshall Durbin] and [the Fullers] and that [Marshall Durbin] is not obligated to provide [the Fullers] with any flocks after the flock delivered hereunder has been grown to maturity. This Agreement covers only poultry delivered by [Marshall Durbin] to [the Fullers] at or simultaneous [sic] with the execution of this Agreement. Upon completion of the grow-out process for the flock applicable to this contract, this Agreement shall terminate. . . . It is also expressly understood and agreed that [the Fullers] shall be under no obligation to accept further growing contracts upon the completion of the grow-out process for the flock applicable to this contract."
Soon after the poultry-house fire, however, this perennial business relationship ceased. Marshall Durbin objected to the conditions of the poultry houses. In March or April 1998, it notified the Fullers that it would no longer supply them with chickens unless they not only repaired the fire-damaged building, but also repaired and upgraded the other two poultry houses.
For the next several months, the Fullers repaired and upgraded their facilities. In March 1999, the Fullers notified Marshall Durbin that repairs had been completed and requested another flock of chickens. Marshall Durbin, however, refused to resume the business relationship.
Subsequently, the Fullers sued Marshall Durbin and Roden. Their complaint alleged, among other things, fraud and breach of an oral
contract.[2] They alleged that these claims all arose out of discussions regarding the conditions under which the business relationship would resume, discussions they allege took place after the last of the grow-out contracts had expired.
As to the breach-of-contract claim, the complaint specifically alleged that the Fullers and Marshall Durbin had "entered into a contractual relationship based upon [a] *Page 323 course of dealing between the parties" and that, "[i]n consideration of [the Fullers'] maintaining the poultry houses as agreed between the parties, . . . Marshall Durbin agreed to provide poultry for the [Fullers'] benefit." (Emphasis added.) The complaint further alleged:
 "26. While the [oral] contractual agreement was in full force and effect after the expiration by its terms of the last Chicken Feeding and Growing Contract between the parties, the [Fullers] repaired the poultry houses per the requirements of [the] Defendants, gave notice of the same to the Defendants, and demanded poultry under the course of dealings contract between the parties.
 "27. The Defendants have failed or refused to honor the contract between said Defendants and [the Fullers] according to the provisions of the contract and have failed and refused to perform according to the contract."
(Emphasis added.)
Roden and Marshall Durbin jointly moved to compel arbitration of the action. The trial court denied their motion. Roden and Marshall Durbin have appealed, contending that the Federal Arbitration Act,9 U.S.C. § 1 et seq. (the "FAA"), controls this case and requires the arbitration of the Fullers' claims.
The FAA applies only if (1) there is a "written agreement calling for arbitration," Prudential Sec., Inc. v. Micro-Fab, Inc., 689 So.2d 829,832 (Ala. 1997); and (2) the contract containing the arbitration agreement "substantially affects interstate commerce." Sisters of theVisitation v. Cochran Plastering Co., 775 So.2d 759, 766
(Ala. 2000). "The party seeking to compel arbitration has the burden of proving the existence of a [written] contract calling for arbitration. . . . In order to prevail on an assertion of arbitrability, the moving party is required to produce some evidence which tends to establish its claim." Ryan's Family Steak Houses, Inc. v. Regelin,735 So.2d 454, 457 (Ala. 1999) (internal quotations omitted). Because the complaint alleges fraud and breach of an oral contract, the initial burden of Roden and Marshall Durbin is to present prima facie proof of the first element, namely, the existence of some written agreement calling for arbitration.
They attempt to meet this burden by resorting to an arbitration clause in the grow-out contracts. That clause provided in pertinent part:
 "In the event any and all disputes between the parties hereunder cannot be resolved . . ., then, any controversy, dispute, cause of action, theory of recovery, or claim arising out of or relating to this Agreement, or any breach thereof, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. . . ."
They contend that, in fact, the Fullers' claims "arise out of or relat[e] to" the written grow-out contracts. We disagree.
"[I]n order for a dispute to be characterized as arising out of or relating to the subject matter of the contract, and thus subject to arbitration, it must at the very least raise some issue that cannot be resolved without a reference to or construction of the contract itself."Koullas v. Ramsey, 683 So.2d 415, 418 (Ala. 1996). "If there is no such connection between the claim and the contract, then the claim could not reasonably have been intended to be subject to arbitration within the meaning of a clause that required arbitration only for claims `arising out of or related to' the contract." Id.
Roden and Marshall Durbin contend that, in a trial of the Fullers' action, a resolution of the issues would require a *Page 324 
resort to a grow-out contract. We disagree, for a number of reasons. First, ¶ 4 of the grow-out contract states: "This Agreementcovers only poultry delivered by [Marshall Durbin] to [the Fullers] ator simultaneous [sic] with the execution of this Agreement. Uponcompletion of the grow-out process for the flock applicable to thiscontract, this Agreement shall terminate." (Emphasis added.) Thus, the grow-out contracts, by their express terms, expire at the end of each "grow-out process." In other words, each grow-out contract is expressly limited to its respective grow-out period.
It is elementary that "[o]nce the contract has been fully performed (executed), it is no longer a contract." Texaco, Inc. v. Louisiana Land Exploration Co., 136 B.R. 658, 668 (M.D.La. 1992). Otherwise stated, when "a contract ceases to be executory, for all practical purposes, it ceases to exist." Phar-Mor, Inc. v. Strouss Building Assocs.,204 B.R. 948, 952 (N.D.Ohio. 1997) (internal quotations omitted). It is undisputed that the "grow-out process" governed by the last of the grow-out contracts was completed to the satisfaction of all parties. Thus, the Fullers' cause of action does not arise out of any of the grow-out periods governed by the grow-out contracts.
Second, ¶ 4 states: "[The Fullers] acknowledge that the execution of this Agreement does not create a continuing relationship
between [Marshall Durbin] and [the Fullers] and that [Marshall Durbin] is not obligated to provide [the Fullers] with any flocks after the flock delivered hereunder has been grown to maturity." (Emphasis added.) Thus, ¶ 4 expressly disavows any connection between the grow-out contract and the very relationship that the Fullers allege their claims are based on. Obviously, the Fullers' claim that Marshall Durbin breached an oral contract to "provide poultry for the [Fullers]" does not arise under, and would not be aided by, a construction of the grow-out contract.
In this connection, Roden and Marshall Durbin insist that the Fullers "seek to impose contractual obligations upon Marshall Durbin that areexpressly precluded by a written contractual agreement." Brief ofAppellants, at 19 (emphasis added). Therefore, they argue, the Fullers "assert claims that cannot be resolved with[out] reference to and construction of the written [grow-out contract]." Id.
Because it stands on a patent misreading of the grow-out contract, we disagree with this argument. The grow-out contract does not expresslypreclude the formation of an ongoing business relationship. In other words, the grow-out contract does not say that it prohibits the parties from contracting in the manner the Fullers allege, but merely states that it does not itself constitute such an agreement. The grow-out contracts are simply immaterial to the issue whether the parties, after the written grow-out contracts had expired, entered an oral contract. At trial, satisfactory proof may be made of the existence and duration of the business relationship between the Fullers and Marshall Durbin without resort to any of the written grow-out contracts. Of course, the Fullers will bear the burden, peculiar to any action involving an alleged oral agreement, of proving the terms of the alleged agreement. But the grow-out contracts will not aid the Fullers in meeting their burden on this issue.
Similarly, we are unpersuaded by Roden and Marshall Durbin's argument that the Fullers have, by alleging a course of dealing as a basis of the oral contract, somehow invoked express provisions of the grow-out contracts. This argument is essentially a restatement of the argument *Page 325 
that the Fullers are "seek[ing] to impose contractual obligations upon Marshall Durbin that are expressly precluded by a written contractual agreement." Brief of Appellants, at 19 (emphasis added).
In other contexts, "course of dealing" is defined as "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Ala. Code 1975, § 7-1-205(1). A course of dealing is "relevant not only to the interpretation of express contract terms, but may [itself] constitute contract terms." James J. White Robert S. Summers, Handbook of the LawUnder the Uniform Commercial Code § 3-3, at 98 (2d ed. 1980). Indeed, it "may not only supplement or qualify express terms, but in appropriate circumstances, may even override express terms." Id. (emphasis added).
Once again, we note that the grow-out contracts do not prohibit the formation of a contract based on the course of dealing of the parties. They merely state that one may not resort to them for proof of an expressobligation to provide poultry. For this reason, and because proof of the alleged course of dealing need not involve the admission of the grow-out contracts, none of the provisions of those defunct contracts will be in issue at trial. In short, the Fullers' claims do not "aris[e] out of or relat[e] to" any of the grow-out contracts.
Consequently, Roden and Marshall Durbin did not carry their burden of proving the existence of a written agreement calling for arbitration. The order of the trial court denying the motion to compel arbitration is affirmed.
AFFIRMED.
Johnstone and England, JJ., concur.
Hooper, C.J., and Maddox, Houston, and Lyons, JJ., concur in the result.
[1] These contracts were, apparently, substantively identical.
[2] They also alleged, against Roden, interference with a business relationship.