814 So.2d 222 (2001)
CELTIC LIFE INSURANCE COMPANY
v.
Diane McLENDON.
Jeffrey Fredrickson
v.
Diane McLendon.
1992060 and 1992061.
Supreme Court of Alabama.
June 1, 2001.
Rehearing Denied September 7, 2001.
*223 Robert S.W. Given, F.A. Flowers III, Harlan F. Winn III, and Rebecca W. Block of Burr & Forman, L.L.P., Birmingham, for Celtic Life Ins. Co.
Jerry Dean Hillman, Barry A. Brock, and J. David Moore of Walston, Wells, Anderson & Bains, L.L.P., Birmingham, for Jeffrey Fredrickson.
Ted L. Mann and Robert Potter of Mann & Cowan, P.C., Birmingham; and Jim S. Calton, Jr., of Calton & Calton, Eufaula, for appellee.
WOODALL, Justice.
Celtic Life Insurance Company ("Celtic") and its "soliciting agent" Jeffrey Fredrickson appeal from an order denying their motions to compel arbitration of an action commenced by Diane McLendon. We reverse and remand.
On January 13, 1999, McLendon completed and signed an application seeking health insurance. Fredrickson submitted the application to Celtic, which approved it and issued McLendon a major-medical policy, effective March 1, 1999. In June 1999, McLendon underwent surgery and submitted a claim to Celtic for payment under the policy. Celtic denied the claim, contending that the condition for which she was treated predated the issuance of the policy and that she had failed to disclose the preexisting condition on her application. Moreover, by a letter dated January 14, 2000, Celtic informed her that it was rescinding the policy because of her alleged failure to disclose a preexisting condition. The letter was accompanied by a check purporting to refund the premiums she had paid.
On March 22, 2000, McLendon filed an eight-count complaint against Celtic and Fredrickson. Her complaint included claims of breach of contract, fraud, bad-faith failure to pay an insurance claim, and conversion of premiums. Celtic and Fredrickson moved to compel arbitration of *224 the dispute on the basis of the following provisions in the policy:
"Controversies or disputes arising out of, in connection with, or relating to this certificate which cannot be resolved to the satisfaction of both parties, may be resolved by arbitration, only as herein provided. Except that, judicial injunctive relief may be sought if such action is necessary to avoid irreparable harm or to preserve the status quo....
". . . .
"... It is understood and agreed that the arbitration shall be binding upon the parties, that the parties are waiving their right to seek remedies in court (except for judicial injunctive relief, as stated above), including the right to a jury trial; and that an arbitration award may not be set aside in later litigation except upon the limited circumstances set forth in the Federal Arbitration Act. Judgment upon the award rendered by the arbitration panel may be entered in any court having jurisdiction thereof."
Celtic supported its motion with various documents, including an affidavit detailing the connection of the transaction with interstate commerce. The trial court denied their motions, and Celtic (case no. 1992060) and Fredrickson (case no. 1992061) appealed.
The appeal of an order denying a motion to compel arbitration is generally subject to de novo review. Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000); First American Title Ins. Corp. v. Silvernell, 744 So.2d 883 (Ala. 1999); Jim Burke Auto., Inc. v. Murphy, 739 So.2d 1084 (Ala.1999); Crimson Indus., Inc. v. Kirkland, 736 So.2d 597 (Ala. 1999). The proponent of arbitration has the initial burden of producing (1) a written arbitration agreement, covering (2) a transaction that "substantially affects interstate commerce." Sisters of the Visitation v. Cochran Plastering Co., 775 So.2d 759, 761 (Ala.2000). "[A]fter a motion to compel arbitration has been made and supported, the burden [shifts to] the nonmovant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question." Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995) (emphasis omitted). Celtic and Fredrickson have made the necessary prima facie showing of the existence of a controlling arbitration agreement. McLendon, therefore, bears the burden of demonstrating that the "arbitration agreement is not valid or does not apply to the dispute in question."[1]Id.
In this connection, McLendon makes three arguments. Her first argument focuses on that portion of the arbitration clause stating: "Controversies or disputes arising out of, in connection with, or relating to this certificate which cannot be resolved to the satisfaction of both parties, may be resolved by arbitration...." (Emphasis added.) Essentially, she contends that the use of the word "may," instead of the word "shall," renders the clause unenforceable if either party to the agreement objects to arbitration. In other words, she argues, neither party has a right to insist on arbitration. This contention is faulty for two reasons.
First, McClendon's argument focuses on the word "may" in isolation. However, "[i]nsurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions." Attorneys Ins. Mut. of Alabama, Inc. v. Smith, *225 Blocker & Lowther, P.C., 703 So.2d 866, 870 (Ala.1996) (emphasis added); see also Hall v. American Indem. Group, 648 So.2d 556, 559 (Ala.1994); State Farm Mut. Auto. Ins. Co. v. Lewis, 514 So.2d 863, 865 (Ala.1987). McLendon's interpretation ignores other terms of the arbitration provision, such as: "It is understood and agreed that the arbitration shall be binding upon the parties, that the parties are waiving their right to seek remedies in court (except for judicial injunctive relief, as stated above), including the right to a jury trial; and that an arbitration award may not be set aside in later litigation...." (Emphasis added.) These latter clauses resolve any ambiguity created by the use of the word "may" and make it clear that arbitration is not "optional."
Second, McLendon's interpretation of the arbitration provision simply does not make sense, as other courts addressing and rejecting similar interpretations have concluded. "[T]he use of the word `may' in an arbitration agreement does not imply that the parties to the agreement have the option of invoking some remedy other than arbitration." Held v. National R.R. Passenger Corp., 101 F.R.D. 420, 424 (D.D.C.1984) (emphasis added). "Rather, `[t]he sole option an aggrieved party retained through use of the word "may" was to abandon its claim.'" Id. Such an interpretation "would render the arbitration provision meaningless for all practical purposes. If the parties to such an agreement intended for arbitration to be permissive, there would be no reason to include... the arbitration provision in the contract, for the parties to an existing dispute could always voluntarily submit it to arbitration." Austin v. Owens-Brockway Glass Container, Inc., 78 F.3d 875, 879 (4th Cir.) (emphasis added), cert. denied, 519 U.S. 980, 117 S.Ct. 432, 136 L.Ed.2d 330 (1996). See also American Italian Pasta Co. v. Austin Co., 914 F.2d 1103, 1104 (8th Cir.1990); Atkins v. Louisville & Nashville R.R., 819 F.2d 644, 648-49 (6th Cir.1987) (language directing that disputes "may be referred by either party to an arbitration committee" was mandatory); Bonnot v. Congress of Indep. Unions, Local No. 14, 331 F.2d 355, 359 (8th Cir.1964); Deaton Truck Line, Inc. v. Local Union 612, 314 F.2d 418, 422 (5th Cir.1962); McCrea v. Drs. Copeland, Hyman & Shackman, P.A., 945 F.Supp. 879, 881 (D.Md.1996) (language directing that "either party may petition the ... court... for an order compelling ... arbitration" was mandatory); Block 175 Corp. v. Fairmont Hotel Mgmt. Co., 648 F.Supp. 450, 451 (D.Colo.1986) (clause providing that "either party may serve upon the other a written notice stating that such party desires to have the controversy ... reviewed by an arbitrator" was mandatory); accord, Beaver Constr. Co. v. Lakehouse, L.L.C., 742 So.2d 159, 164-65 (Ala. 1999) ("By definition, binding arbitration is ... a limitation on the right to litigate. In other words, one party cannot litigate while the other party arbitrates.... Because, as a practical matter, arbitration and litigation of the same subject matter are mutually exclusive, the plaintiffs' interpretation of the [contract] is unworkable.").
Next, McLendon insists that Celtic's rescission of the policy rendered the arbitration clause unenforceable. This is so, because, she argues, as a result of the rescission, no contract exists. She contends that Celtic "cannot seek to enforce the arbitration provision in the insurance contract and, at the same time, void the health insurance contract." Brief of Appellee, at 17. Recently, this Court addressed, and rejected, an argument functionally identical to the one McLendon presents here.
*226 Celtic Life Insurance Co. v. Lindsey, 765 So.2d 640 (Ala.2000), involved actions against Celtic, alleging breach of contract, fraud, and bad-faith failure to pay a claim. Id. at 640. The dispute arose out of Celtic's refusal to pay a claim made against a health-insurance policy it had issued to Kimberly Lindsey and Gary Lindsey. As in this case, Celtic denied the claims on the ground that "they were based on a medical condition ... [that] preexisted the issuance of the insurance policy." Id. at 641. As in this case, Celtic "purported to rescind the contract of insurance by tendering a premium refund." Id. Also as in this case, Celtic sought to compel arbitration of the dispute on the basis of an arbitration provision in the policy.
The Lindseys opposed arbitration, arguing that because Celtic had rescinded the contract, it had forfeited the right to enforce the arbitration provision. Id. at 641. This Court rejected that argument, explaining:
"The Lindseys argue that there is now no contract because, they say, Celtic Life has rescinded it, and at the same time they argue that they have claims based on that contract, the very contract they argue does not exist. The Lindseys in effect seek to enforce the contract but without the arbitration provision that was contained in it.... [T]he Lindseys cannot pick and choose between provisions in the contract. Moreover, `"`challenges seeking to avoid or rescind a contract'"' containing an arbitration provision are subject to arbitration."
Id. at 642. Lindsey is indistinguishable from this present case, and fully answers McLendon's objections to arbitration.[2]
Similarly unavailing is McLendon's final argument. She argues that the McCarran-Ferguson Act, 15 U.S.C. § 1101 et seq., operating in tandem with Ala.Code 1975, § 27-14-22, "reverse-preempts" the Federal Arbitration Act, 9 U.S.C. § 1, et seq., thus saving the application of Ala. Code 1975, § 8-1-41(3), Alabama's antiarbitration statute, in the case of policies of insurance. This Court has soundly rejected that position. American Bankers Ins. Co. of Florida v. Crawford, 757 So.2d 1125 (Ala.1999); Ex parte Foster, 758 So.2d 516 (Ala.1999).
In summary, McLendon has failed to rebut the defendants' proof of a valid, enforceable agreement to arbitrate. For these reasons, the order of the trial court denying Celtic and Fredrickson's motions to compel arbitration is reversed, and the cause is remanded for further proceedings consistent with this opinion.
1992060REVERSED AND REMANDED.
1992061REVERSED AND REMANDED.
BROWN, HARWOOD, and STUART, JJ., concur.
HOUSTON, J., concurs specially.
JOHNSTONE, J., dissents.
MOORE, C.J., and SEE and LYONS, JJ., recuse themselves.
HOUSTON, Justice (concurring specially).
As the majority opinion states, this Court has soundly rejected the position I took in American Bankers Insurance Co. of Florida v. Crawford, 757 So.2d 1125, *227 1136 (Ala.1999) (Houston, J., concurring in part and dissenting in part). Although I still think that I am right and the majority is wrong on this issue, there comes a time when one must follow stare decisis. That time has come.
JOHNSTONE, Justice, (dissenting).
As the party seeking to compel arbitration, Celtic bears the burden of proving the existence of a valid contract providing for arbitration. Marshall Durbin Farms, Inc. v. Fuller, 794 So.2d 320 (Ala.2000); and Transouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). The insurance policy itself contains the arbitration provisions Celtic seeks to invoke. Celtic's rescinding the policy, including its arbitration provisions, forecloses the very proof Celtic needs to carry its burden. A party who bears but does not successfully carry a burden of proof loses the issue. Stansell v. Tharp, 245 Ala. 270, 16 So.2d 857 (1944). See, e.g., Marshall Durbin Farms, supra. To the extent that Celtic Life Ins. Co. v. Lindsey, 765 So.2d 640 (Ala.2000), holds to the contrary, it is mistaken for ignoring the placement of the burden to prove a valid contract in order to compel arbitration. We should affirm the order denying the motions to compel arbitration.
NOTES
[1] McLendon does not challenge Fredrickson's standing to compel arbitration.
[2] McLendon's reliance on Ex parte Cobb, 781 So.2d 208 (Ala.2000), and Ex parte Payne, 741 So.2d 398 (Ala.1999), is misplaced. Those cases are clearly distinguishable. Each of those cases involved the nonoccurrence of a condition precedentapproval of a request for financingto the formation of the contract. Here, it is undisputed that a contract was formed.